Viola COLLINS, Appellant,

v.

Marilee GALBRAITH, Appellee.

Court of Appeals of Kentucky.

May 4, 1973.

Charles V. Collins, Lexington, for appellant.

Leslie Morris, II, Robert M. Odear, Stoll, Keenon & Park, Lexington, for appellee.

PALMORE, Chief Justice.

The appellant, Viola Collins, sued the appellee, Marilee Galbraith, for personal injuries sustained in a collision between a car driven by Billy Edwards, in which Viola was a passenger, and a car driven by Marilee. The appeal is from a judgment entered pursuant to a verdict for the defendant. We affirm.

Marilee asserted a third-party complaint against Edwards, whereupon Edwards counterclaimed against Marilee, but these claims were settled at the conclusion of the testimony and before Viola's case against Marilee was submitted to the jury. One of the questions raised on the appeal is whether, under these circumstances, Viola was prejudiced by the fact that the instructions enumerated Edwards' duties as well as Marilee's.

The accident happened at the intersection of Broadway and the New Circle Road in Lexington, Kentucky. The defendant, Marilee, proceeding eastwardly on the New Circle Road, was making a left turn to go north on Broadway toward her home at Paris. Edwards was driving westward on the New Circle Road intending to continue straight across Broadway. The intersection was controlled by automatic traffic lights.

Basically, each of the two streets in question had five traffic lanes approaching the intersection, the two outer lanes on each side being for vehicles going straight through or turning to the right and the middle lane being for vehicles turning left. The sequence of light changes was such that (1) while the light was green for through traffic it was red for the left-turn lanes as well as for through traffic on the intersecting street, and (2) when (or shortly after) it turned red for through traffic a green arrow came on for left-turn traffic on that street during an interval while the lights remained red for all through traffic on both streets, then (3) the green arrow for left-turn traffic turned to a red light and the green light came on for through

traffic on the intersecting street, and finally, to complete the cycle, (4) the light showed red for all through traffic on both streets and the green arrow came on for left-turn traffic on the intersecting street. In short, the green arrow for vehicles in Marilee's situation, turning left from New Circle Road onto Broadway, followed the change from green to red for through traffic on New Circle Road. Thus we do not have the possibility, sometimes encountered when a left-turn signal immediately *precedes* the green light for through traffic, in which a motorist turning left is caught in the face of oncoming through traffic by a light change.

It is clear that either Edwards or Marilee ran a red light. Which of them did so was the threshold issue of fact, the only other submissible issue of negligence being whether, if Edwards was the culprit, Marilee nevertheless should have or did become aware of his dereliction in time to avoid the accident, in which event her negligence would have been a concurring cause. See discussion in Killman v. Taylor, Ky., 453 S.W.2d 574 (1970).

Edwards was traveling in the outer or northernmost of the two westbound through lanes on the New Circle Road. The point of impact was on or very near the left or south margin of his lane as projected across the northbound lanes of Broadway, the intersecting street. Viola says she "knew" Edwards had the green light but was not paying particular attention to other traffic and did not see Marilee's car until an instant before the collision, which she places in Edwards' traffic lane and in the left or westernmost of the northbound through lanes on Broadway. She is not sure whether Edwards had been stopped for a red light before proceeding into the intersection, but says there was another vehicle to their left and slightly ahead moving in the same direction and that she heard its brakes being applied.

Edwards says he stopped for the red light, that no other cars had been stopped in front of him, and that he had just gone forward on the green light when he saw Marilee, about ten feet away, cutting into his path. He says that another car had been stopped to his left in the other westbound lane while they were awaiting the light change and that he first noticed Marilee's automobile when he heard the "squeal" of this other car's brakes.

Marilee's version is that she waited behind another vehicle in the left-turn slot on New Circle Road until the green arrow came on and then followed that vehicle in making her turn. She noticed a car stopped in the inside through lane of New Circle Road at the intersection, but denies that its brakes were "slammed on." She saw the Edwards car approaching the intersection without slackening speed and realized a collision would occur if she continued to execute her turn. Though she could have stopped sooner had she been instantly decisive, she says she stopped at a point where the front of her car was "just about on the line" between the two westbound traffic lanes on New Circle Road, that this allowed ample room for Edwards to go by without striking her car, but that as the moment of impact approached she saw that he was not looking ahead, but was facing Viola, his passenger, and that when he "looked up and saw the light . . . he threw on his brakes. He was coming at an angle."

■ Viola's first argument is that she was entitled to a directed verdict on the basis of Marilee's testimony to the effect that she continued in the execution of her turn after realizing that Edwards was not going to stop. We do not agree that the import of Marilee's testimony was that clear-cut. By the time the lawyers got through twisting her one way and then the other it was fairly up to the jury to decide what she really meant to say. And even if it be conceded that she realized all along that Edwards was not going to stop, certainly she was entitled to have the jury determine whether it was reasonable for her to believe that she was stopping short

enough to let Edwards pass in safety. This type of argument is simply a waste of time.

The second contention is that two witnesses whose names had not been furnished to Viola's counsel sufficiently in advance of the trial should not have been permitted to testify. There was no court order regulating the matter, but upon completion of Marilee's pretrial deposition her attorney agreed to advise Viola's counsel of any witnesses later turned up.

Suffice it to say that there is no suggestion of bad faith and no real claim of prejudice. The trial court took great pains to ascertain that no disadvantage would result from admitting the testimony, and to this end allowed adverse counsel to interview one of the witnesses before deciding to let him appear. It is significant, we think, that no party sought a continuance or recess on the ground of surprise or in order to conduct any further investigation claimed to be justified by what the witnesses said. In the final analysis, the question of whether one party has put another at an unfair disadvantage through pretrial nondisclosures must be addressed to the sound discretion of the trial court. We do not detect in this record the remotest possibility that the presiding judge abused that discretion.

The final argument goes to the instructions, which we find to have been filled with superfluity but neither erroneous nor prejudicial.

Only Marilee's duties were pertinent to Viola's cause of action. She had the duty to exercise ordinary care for the safety of other persons using the street, which general duty included the following specific duties: (a) to keep a lookout ahead for other vehicles in front of her or so near her intended line of travel as to be in danger of collision, (b) to have her automobile under reasonable control, (c) to exercise ordinary care generally to avoid collision with other persons or vehicles using the street, and (d) not to enter the intersection while the traffic light for her lane was red. If she failed to comply with any one or more of these duties and such failure was a substantial factor [1] in causing the collision, then Viola was entitled to recover; and unless the jury so believed, the law was for Marilee.[2]

The instructions given by the trial court enumerated all of the duties incumbent upon both Marilee and Edwards and told the jury to find for Viola if it believed from the evidence that Marilee failed to comply with any one or more of them and that such failure was a direct and proximate cause of the accident, *"even though you may believe from the evidence that the driver Billy Edwards also failed to observe any one or more of the duties imposed upon him . . . and that his failure, if any, was also a direct and proximate cause of the collision,"* etc. (Emphasis added.) The jury was further instructed to the effect that if Edwards was negligent and such negligence was the sole cause of the accident it should find in Marilee's favor.

It was not necessary to instruct on Edwards' duties or on the effect of his concurring or sole negligence upon Marilee's liability. Nevertheless, the propositions of law stated by the instructions were correct and applicable to the facts of the case, and we do not perceive any serious possibility that the presence of those which need not have been recited could have misled the jury. Viola's contention that somehow the enumeration of Edwards' duties may have

---

1. See Restatement 2d Torts, § 231, as cited in Claycomb v. Howard, Ky., 493 S.W.2d 714 (1973), using this terminology in preference to "proximate cause."

2. The converse of the instruction on Marilee's liability was not given in this instance and in that respect the instructions were less favorable to Marilee than she was entitled. See Stanley's Instructions to Juries, § 14a.

carried the inference that his fault, if any, was imputable to Viola simply cannot stand in the face of the specific language, quoted in the preceding paragraph of this opinion, explicitly negating such an inference.

■ One other argument made in this connection is that Viola was entitled to a specific instruction to the effect that Edwards' negligence was not imputable to her.

See Reed v. Hostetler, Ky., 245 S.W.2d 953, 957 (1952), in which the omission of such an instruction was held reversible error. In that instance the driver of the car in which the guest passenger was riding was her husband, and both were asserting claims against the other driver, thus presenting a situation in which it could be argued that there was more reason for the jurors to assume that the driver's negligence was imputable to the passenger than would have been so in the case now before us. We doubt, however, that a specific instruction on non-imputability ever is necessary under instructions which do not (as, of course, they should not) contain any suggestion that the driver's negligence *is* imputable to the guest, and for that reason are not inclined to regard Reed v. Hostetler as sound authority. Nevertheless, it is unnecessary to overrule it directly, because this case is governed by Malone's Ex'x v. Chesapeake & O. Ry. Co., 249 Ky. 832, 61 S.W.2d 876 (1933), in which it was held that language in the instructions to the effect that if the death of the plaintiff's decedent resulted from the combined negligence of the defendant railroad company and the driver of the car in which he was riding when struck by the train the railroad company was liable, "was equivalent in effect to telling the jury that the negligence of Pollitt, the driver, was not attributable to Malone [the decedent]." That was the precise effect of the portion of the instructions we have quoted verbatim in this case.

■ In conclusion, it may be well to mention that whenever counsel feels that jurors might draw inferences that are not warranted by the specific terminology of the instructions, his opportunity to guard against it comes in the closing argument. If instructions are to be kept concise and to the point, as they should be, their supplementation, elaboration and detailed explanation fall within the realm of advocacy. Contrary to the practice in some jurisdictions, where the trial judge comments at length to the jury on the law of the case, the traditional objective of our form of instructions is to confine the judge's function to the bare essentials and let counsel see to it that the jury clearly understands what the instructions mean and what they do not mean. In this instance, the instructions contained no basis on which the jury could properly have imputed any fault on the part of Edwards to Viola, his passenger, and we have no reason to suppose (the closing arguments were not transcribed) that her able counsel did not make that point crystal clear in his summation.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.