**GRAYSON FRATERNAL ORDER OF EAGLES, AERIE NO. 3738, INC., Appellant,**

v.

**Patricia CLAYWELL, Individually and as Administratrix of the Estate of Jack D. Claywell; and Rick May and Larry Whitt, Appellees.**

**No. 86–SC–832–DG.**

Supreme Court of Kentucky.

Sept. 24, 1987.

David R. Reeves, Grayson, for appellant.

Edwin J. Walbourn, III, Ashland, for appellee, Claywell.

Mark Webster, Hollis L. Searcy, Amshoff, Amshoff & Searcy, Louisville, for appellee, May.

Robert W. Miller, Grayson, for appellee, Whitt.

LEIBSON, Justice.

The issue in this case is whether and under what circumstances one may recover damages against a dram shop furnishing intoxicating liquor to a person actually or apparently under the influence of alcoholic beverages, who, because of his intoxicated condition, subsequently injures a third party. Otherwise stated, does a claim grounded in common law dram shop liability state a cause of action?

The trial court held that it did not, and sustained a motion to dismiss the complaint upon grounds that it failed to state a claim upon which relief can be granted. CR 12.-02. The Court of Appeals reversed, and we have accepted discretionary review to consider the question.

This case arises out of a motor vehicle collision on June 16, 1983, at the intersection of U.S. 60 and Robert and Mary Streets in Carter County, Kentucky. The complaint, as amended, seeks damages against the appellant, Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. ("Eagles Club"), and its bartender, Larry Whitt, for negligence in the unlawful sale of alcoholic beverages to a patron of the club who then had an automobile accident because he was intoxicated. It is alleged that the Eagles Club was engaged in the sale of alcoholic beverages for profit in dry territory, that it served alcoholic beverages to Jacky Kevin Bailey and Homer Craig Horton, Jr., who became intoxicated thereby, and that upon leaving the premises of the Eagles Club and as a direct consequence of this overconsumption of alcoholic beverages, Horton (or Bailey) then proceeded to operate Horton's automobile carelessly, negligently, recklessly and wantonly and collided with a police car operated by Officer Claywell in which Officer May was a passenger. As a result Claywell was killed and May sustained serious and substantial personal injuries.

The deposition of Larry Whitt, the bartender in charge of the Eagles Club at the time, is part of the record. He testified as follows in pertinent part: (1) Horton was already "a little tight" when he came to the Eagles Club, and he was "very drunk" when he left; (2) Horton and Bailey were each served beer followed by "four or five double shots of whiskey" over a period of about "an hour and a half" while at the club; (3) the bartender literally forced these two out of the bar so that he could close up and then forced them to get into Horton's car and leave the parking lot so that he could close the gate; (4) and Horton, who was driving, almost ran down Whitt with his car as he was departing the premises of the Eagles Club. Whitt further testified that the Eagles Club sells alcohol for a profit across the bar "just like at any other bar."

The appellees claim that the complaint states a cause of action in common law negligence, and the Court of Appeals agrees. On its face, the complaint contains the usual elements for a cause of action, charging negligence, proximate cause from a foreseeable risk of harm, and subsequent injury. However, the appellant claims that regardless of negligence, we should be bound by an archaic common law doctrine,

now overwhelmingly rejected by our sister states,[1] that "no cause of action existed against one furnishing liquor in favor of those injured by the intoxication of the person so furnished." *See* 97 A.L.R.3d 528, 533.

The historical basis for this ancient rule, as with many others, lies with the old English writ system, which only selectively recognized a duty and provided a remedy at the King's pleasure. The writ system has been long since discarded as the basis for the tort system, replaced in the main with the negligence concept. As stated in *Gas Service Co., Inc. v. City of London*, Ky., 687 S.W.2d 144, 148 (1985), paraphrasing *Tort Law in America, An Intellectual History*, by G.E. White, pp. 17–18 (1980):

> "The concept of liability for negligence expresses a universal duty owed by all to all. The duty to exercise ordinary care commensurate with the circumstances is a standard of conduct that does not turn on and off depending on who is negligent."

Nevertheless, in the present case, appellant argues as an historical premise that there is no duty owed by the tavern owner to the person subsequently injured, regardless of negligence, foreseeability and proximate cause. Prosser discusses the "artificial character" of reasoning from the premise of "no duty" in disregard of negligence principles in these words:

> "The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.... It is a shorthand statement of a conclusion, rather than an aid to analysis in itself.... [I]t should be recognized that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." Prosser and Keeton on The Law of Torts, § 53, 357–58 (5th ed. 1984).

It is a subject of controversy in this case as to whether or not it was ever the rule in this jurisdiction that, regardless of circumstances, a tavern owner had no liability for injuries subsequently caused by intoxication, and whether or not, if it ever was the rule, this rule has already been rejected by our Court in *Pike v. George*, Ky., 434 S.W.2d 626 (1968). The appellant argues that the *Pike* case restates an earlier "no liability" rule, and, indeed, the case refers to an earlier rule without expressly overruling it. Nevertheless, when one analyzes the earlier cases (see *infra*) it is debatable that we ever applied an absolute "no liability" rule, and in *Pike* we reversed the decision of a trial court to dismiss for failure to state a cause of action, holding that a complaint that charged a tavern owner with liability for subsequent injuries resulting when he negligently and illegally sold alcoholic beverages to a minor was sufficient. Indeed, Kentucky is listed among the states recognizing common law dram shop liability in the article previously cited, 97 A.L.R.3d 528 at § 6[a], and in a multitude of other law review articles and case appendices attempting to list states which recognize common law dram shop liability, and states which do not. *See*, e.g., Beitman, *Dram Shop Liability*, Trial, March 1985 at 38–40; *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731 (1985); and *Sorensen v. Jarvis*, 119 Wis.2d 627, 350 N.W.2d 108 (1984).

While it is true that *Pike v. George*, *supra*, involved illegal sale of intoxicating liquor to a minor, whereas the present case involves sale to an intoxicated person, it is arbitrary to make a distinction on this basis, and textbook authorities have not done so. *See* Prosser and Keeton, *supra* at 718. The operative facts continue to be proof of negligent conduct, foreseeability and proximate cause. Kentucky now defines proximate cause in the terminology of "a substantial factor" in causing the event which occasions the injury. *Claycomb v. Howard*, Ky., 493 S.W.2d 714, 718 (1973); *Col-*

---

1. An Appendix follows this Opinion, summarizing the present state of the law on this subject in the fifty states and the District of Columbia.

lins v. Galbraith, Ky., 494 S.W.2d 527, 530 (1973).

It is questionable that there ever was a blanket common law rule of nonliability for a tavern owner who illegally sells alcohol in Kentucky. The authority cited for such a rule is a case now 76 years old, *Britton's Adm'r v. Samuels*, 143 Ky. 129, 136 S.W. 143 (1911), which denied the right to sue to the family of a man who drank himself to death, stating that "death was produced, not by the sale [of the liquor], but by the drinking thereof by deceased." Nevertheless, the court indicated that there would, perhaps, be a cause of action if the widow established that the sale was made for the purpose of injuring her husband or with the knowledge that her husband intended to drink the alcohol to such an extent as to produce injury, or if the seller had reason to believe that the purchaser could not be safely trusted with whiskey.

Another 1911 case, *Waller's Adm'r v. Collinsworth*, 144 Ky. 3, 137 S.W. 766 (1911), like *Britton's Adm'r, supra,* held that the plaintiff had failed to state a cause of action for wrongful death against a tavern keeper, but, again, with reservations. The defendant unlawfully sold intoxicating liquor to one who thereby became intoxicated and, after leaving the defendant's premises, shot and killed the plaintiff's decedent. The court stated that the inquiry "in every case" is whether the injury was a natural and probable consequence of the wrongful act and whether the injury ought to have been foreseen in light of the attendant circumstances. This suggests that in a case such as the present one where it is claimed that there is ample evidence from which it could be inferred that the probable consequences from further intoxication were reasonably foreseeable, a different result should obtain.

The most important consideration in reviewing these earlier cases is that there is a qualitative difference between the present situation and the circumstances at the turn of the century, a difference that is critical to the foreseeability question. That change in circumstances has been brought about by the advent of the principle instrument of death and destruction of our day, the highspeed automobile. As stated in *Lopez v. Maez*, 98 N.M. 625, 651 P.2d 1269, 1276 (1982), wherein New Mexico discarded the anachronistic rule of nonliability:

"In light of the use of automobiles and the increasing frequency of accidents involving drunk drivers, we hold that the consequences of serving liquor to an intoxicated person whom the server knows or could have known is driving a car is reasonably foreseeable."

The Supreme Court of Pennsylvania, in deciding to recognize common law dram shop liability in a case with a defendant similar to our own, *Jardine v. Upper Darby Lodge No. 1973, Inc.*, 413 Pa. 626, 198 A.2d 550, 553 (1964), stated:

"An intoxicated person behind the wheel of an automobile can be as dangerous as an insane person with a firearm. He is as much a hazard to the safety of the community as a stick of dynamite that must be de-fused in order to be rendered harmless. To serve an intoxicated person more liquor is to light the fuse."

The *1986 Kentucky Traffic Accident Facts Report* published by the Kentucky State Police lists "alcohol involvement" as a "contributing factor" in 21% of fatal accidents and 12% of nonfatal accidents. *Id.* at 11. The report states that in 1986 in Kentucky there were 7,761 accidents listed as "alcohol involved" because "the driver was determined to have been drinking." *Id.* at 22. As a result of such accidents 194 persons were killed and 5,605 persons reported injured. *Id.* Following the significant increase in criminal penalties imposed for drunk driving by Kentucky's "Slammer Bill," effective July 13, 1984, there was a measurable reduction in the alcohol attributed carnage on our highways, a trend *unhappily* reversed in 1986. The report concludes, "[t]he sharp increase in persons killed and injured during 1986, indicates that the 'Novelty' of the 'Slammer Bill' has worn off as far as the driving public is concerned." *Id.* The criminal law alone is not enough to stop the carnage from drunk driving. Civil law liability to the victims is

a "must" where the tavern keeper's fault and responsibility can be proved.

By continuing to supply alcohol to a person who is noticeably impaired when the seller knows or should know from the attendant circumstances that the buyer is likely to exit the establishment behind the wheel of an automobile, the seller is as much a wrongdoer as the buyer, often times more so because at least the seller is a sober contributor to the intoxication process. It is no answer to the victim to tell him that the seller may be punished for a liquor law violation anymore than it would be to tell him that the drunk driver need not respond in damages because he is subject to criminal penalty. The only common sense answer to the victim is common law liability for both.

The assumption that there ever was a common law rule in Kentucky holding that there was no liability in dram shop cases regardless of circumstances, is an assumption which, if true, has been honored mainly in the breach. Nevertheless, as the arbiters of the common law our court is not eternally mated to a presently indefensible position. To believe otherwise is sanctification of ancient fallacy. The common law is our responsibility, and while always affording stare decisis its due, we recognize the responsibility to correct its imperfections.

As stated in *Hilen v. Hays*, Ky., 673 S.W.2d 713, 717 (1984):

"The common law is not a stagnant pool, but a moving stream.... The common law is our responsibility; the child of the courts. We are responsible for its direction."

█ The rule is that every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury. *M & T Chemicals, Inc. v. Westrick*, Ky., 525 S.W.2d 740 (1974); *Greyhound Corp. v. White*, Ky., 323 S.W.2d 578 (1959). This is an old rule, and a good one. There is no reason to create a privilege against, or an immunity from, its application to dram shop liability.

█ Although numbers are not decisive in such matters, we have attached to this Opinion an *Appendix* covering the present state of the law on the question at issue, so far as we can determine, in the fifty states and the District of Columbia. The fact is that common law dram shop liability is now the law in twenty-six of our sister jurisdictions by court decision, and in addition, there are at least seven more states that have court decisions recognizing common law followed by a Dram Shop Act.[2] Eight more states have imposed liability by Dram Shop Acts. Five states have not yet ruled on this question. There are only five states which have not yet set aside their rule of nonliability either by case decision or statute, a number shrinking rapidly. Liability is now the rule in the mainstream by an overwhelming (and increasing) majority, 41–5.

Thus, when we review the cases around the country deciding the issue of common law dram shop liability, the legal battle is largely over. Only a handful still cling to the indefensible notion that a dram shop has no liability for subsequent injury caused by intoxicating liquor where the circumstances support a common law negligence action. In a recent case repudiating past adherence to the rule of nonliability, the Montana Supreme Court referred to it as a "Neanderthal approach to causation." *Nehring v. LaCounte*, 712 P.2d 1329 (Mont.1986).

Both sides argue that *Pike v. George, supra,* is precedent for their position in this case. The argument hinges on whether the factual difference between *Pike* and this case makes a legal difference. *Pike* recognized common law dram shop liability premised upon selling liquor to a minor. The present case premises liability on selling liquor to an intoxicated person. The appellants argue that minors are "special" and the theory of liability is not transferable. The flaw in this argument is that there is nothing "special" about the negli-

2. California (as usual, marching to a different drummer) has recently abrogated its common law liability rule by statute. *See* Appendix.

gence premise underlying liability in both instances, i.e., the intoxicated person and the minor are high risk *drinkers, with substantial likelihood that selling them liquor will cause such person to have an accident.*

In *McClellan v. Tottenhof,* 666 P.2d 408 (Wyo.1983), the court explained why there is no difference between the statutory prohibition against sales to minors and sales to intoxicated persons, stating:

> "The idea behind both statutes is that these people are more likely to be unable to handle alcohol, that they need protection from themselves, and that society needs protection from them." *Id.* at 413.

In Kentucky it is the same statute that prohibits sale in both instances to, "a minor," KRS 244.080(1), and to "a person actually or apparently under the influence of alcoholic beverages, KRS 244.080(2)." This is a criminal statute and not a dram shop act. The statute does not *per se* impose liability in tort for violation of its terms. But this statute identifies a standard of care imposed upon commercial vendors for the protection of the public, which includes both the consumer and third parties, when the factual circumstances are such that the vendor should reasonably foresee what might result.

KRS 446.070 is styled, *"Penalty no bar to civil recovery."* It provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." The purpose of this statute is to permit a person injured by the violation of a statute to recover damages by reason of the violation. *Allen v. Lovell's Adm'x,* 303 Ky. 238, 197 S.W.2d 424 (1946). For instance, this rule has been applied to recognize a cause of action on behalf of a fire victim where the apartment building lacked adequate exits as required by the Building Code, *Higgins Investments Inc. v. Sturgill,* Ky., 509 S.W.2d 266 (1974), and to recognize a cause of action on behalf of a child visiting a tenant when the child was scalded as the result of a violation of the Plumbing Code,

*Rietze v. Williams,* Ky., 458 S.W.2d 613 (1970).

The present fact situation involves an unlicensed vendor, as opposed to a retail licensee against whom a criminal penalty is imposed under KRS 244.080. As to such an enterprise, which constitutes sale of liquor in "dry territory," it is unlawful to sell "any alcoholic beverage" under any circumstances. KRS 242.230. Counsel for appellant concedes the obvious, that if it is unlawful under KRS 244.080 for a retail licensee to sell to a "minor" or a person "actually or apparently under the influence of alcoholic beverages," a fortiori it is unlawful for an unlicensed vendor to do so.

If the presently alleged violations of the standard of care imposed by KRS 244.080 were committed by a retail licensee, such violation would be treated as negligence *per se* under KRS 446.070. The fact that the Eagles Club was not a licensee, but was acting unlawfully dispensing liquor in the same manner, does not avoid the protection of KRS 244.080, but simply compounds it. The unlicensed vendor has no right to sell alcoholic beverages at all, and even less right to do so in violation of standards imposed upon the licensed vendor.

Appellant's counsel *conceded* that this issue does not turn on whether the defendant, a nonlicensee, could be criminally prosecuted under the statute forbidding a retail licensee from further serving a patron who is becoming noticeably intoxicated. His argument is that this is only a standard for criminal liability, and that no civil liability attaches to those who violate the standard set out in the criminal statute, that there is no "duty" owed to the victims upon which to predicate civil liability. However, civil liability, although it may borrow a standard of conduct from a criminal statute, is not predicated on whether the defendant could have been criminally convicted. Civil liability is predicated on the duty of reasonable care which is owed by each of us to everyone else, the negligence principle. Thus, while the appellant labels his argument as against the existence of a "duty," the content of his argument is that we should

declare, as a matter of law, that violation of this standard of conduct was not a proximate cause or a "substantial factor" contributing to the subsequent occurrence. However, the question of proximate cause is a factual one, not a legal one, depending upon whether the evidence shows that the results of misconduct are reasonably foreseeable. The question whether the appellees will be able to present proof of circumstances sufficient to infer that the defendant knew, or should have known, of the likely results of his conduct, or whether the results were beyond the foreseeable risk, remains to be decided *after* the evidence has been presented. We hold simply that the standard expressed in the statute, the violation of which could result in a criminal sanction against a licensee, is misconduct of a nature which will result in civil liability under the negligence principle, as a failure to exercise reasonable care, when the evidence establishes circumstances from which a jury could reasonably infer that the subsequent accident was within the scope of the foreseeable risk. Except in such cases where reasonable minds could not differ, where the court would conclude as a matter of law that it was clearly unreasonable to foresee the potential harm from the misconduct involved, the question of foreseeable risk is covered by the usual instruction relating to proximate cause, which is an issue framed for the jury in terms of whether the misconduct was a "substantial factor." *Collins v. Galbraith*, Ky., 494 S.W.2d 527 (1973).

The present issue does not turn on the principle of "intervening cause" because before liability attaches the purveyor of the intoxicating liquor must be proved an active participant in the patron reaching the stage of intoxication creating the foreseeable risk of harm. *See Wooten v. Legate*, Ky., 519 S.W.2d 385 (1975) and *Montgomery Elevator Co. v. McCullough*, Ky., 676 S.W.2d 776 (1984) for discussion of intervening cause.

The *Restatement (Second) of Torts*, § 286, reaches the same result. It recognizes the responsibility of the courts to provide for civil liability in these circumstances. It states:

"§ 286. When Standard of Conduct Defined by Legislation or Regulation Will Be Adopted

The court may adopt as the standard of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results."

*Restatement*, § 286, Comment d, confirms that courts can and should "adopt and apply to the negligence action the standard of conduct provided by ... a criminal enactment" under present circumstances; when the court does so, "it is acting to further the general purpose ... in the legislation." By enacting KRS 244.080 the General Assembly has defined a standard of conduct against which negligence can and should be measured, and liability should be imposed where, from the circumstances of the violation, subsequent injury is reasonably foreseeable.

There is no valid reason for pretending that the Kentucky Supreme Court did not forever change the common law nonliability rule in *Pike v. George, supra,* to recognize that tavern owners have a duty to protect the public, including both their patrons and third parties, which will be actionable if that duty is violated. This means that where there is evidence from which it can be reasonably inferred that the tavern keeper knows or should know that he is serving "a person actually or apparently under the influence of alcoholic beverages (KRS 244.080(2))" and that there is a reasonable likelihood that upon leaving the tavern that person will operate a motor vehicle, the elements necessary to establish a negligence action are proved. Based on the pleadings and the evidence as thus far

developed in the present case, a summary judgment was inappropriate.

As a caveat, we note that the decision in this case is not intended to cover a social host and his guests. In Kentucky traditionally we recognize a distinction between the affirmative duty of care owed to a business invitee and the duty owed to a social licensee, a difference that has been critical in some cases. *See Bowers v. Schenley Distillers, Inc.*, Ky., 469 S.W.2d 565, 567 (1971). Similarly, the statute referred to in this opinion, KRS 244.080(2), establishes a standard of care owed to a business invitee.

The opinion of the Court of Appeals is affirmed. The trial court's order dismissing this case for failure to state a cause of action is vacated. The case is remanded to the trial court for further proceedings consistent with this opinion.

STEPHENS, C.J., and GANT, LAMBERT and WINTERSHEIMER, JJ., concur.

STEPHENSON, J., dissents by separate opinion.

VANCE, J., dissents by separate opinion in which STEPHENSON, J. joins.

## APPENDIX

### I. STATE COURTS RECOGNIZING COMMON LAW DRAM SHOP LIABILITY

1) ALASKA—*Nazareno v. Urie*, 638 P.2d 671 (Alaska 1981) and *Morris v. Farley Enterprises, Inc.*, 661 P.2d 167 (Alaska 1983).

2) ARIZONA—*Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983) and *Brannigan v. Raybuck*, 136 Ariz. 513, 667 P.2d 213 (1983).

3) CALIFORNIA—*Vesely v. Sager*, 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151 (1971); Note: Common law liability abrogated by statute in 1978. Cal.Bus. & Prof.

Code § 25602 (West 1985 Supp.) and Cal. Civ.Code § 1714 (West 1985).

4) COLORADO—*Largo Corp. v. Crespin*, 727 P.2d 1098 (Colo.1986).

5) DISTRICT OF COLUMBIA—*Marusa v. District of Columbia*, 484 F.2d 828 (D.C. Cir.1973).

6) FLORIDA—*Davis v. Shiappacossee*, 155 So.2d 365 (Fla.1963) and *Prevatt v. McClennan*, 201 So.2d 780 (Fla.Dist.App. 1967); Note: Limited in 1981 by Fla.Stat. § 768.125 (1983).

7) HAWAII—*Ono v. Applegate*, 62 Hawaii 131, 612 P.2d 533 (1980).

8) IDAHO—*Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980).

9) IOWA—*Lewis v. State*, 256 N.W.2d 181 (Iowa 1977) and *Haafke v. Mitchell*, 347 N.W.2d 381 (Iowa 1984).

10) KENTUCKY**—*Pike v. George*, Ky., 434 S.W.2d 626 (1968).

11) LOUISIANA—*Thrasher v. Leggett*, 373 So.2d 494 (La.1979).

12) MASSACHUSETTS—*Adamian v. Three Sons, Inc.*, 353 Mass. 498, 233 N.E.2d 18 (1968) and *Michnik-Zilberman v. Gordon's Liquor, Inc.*, 390 Mass. 6, 453 N.E.2d 430 (1983).

13) MISSISSIPPI—*Munford, Inc. v. Peterson*, 368 So.2d 213 (1979).

14) MISSOURI—*Sampson v. W.F. Enterprises, Inc.*, 611 S.W.2d 333 (Mo.App. 1980) and *Carver v. Schafer*, 647 S.W.2d 570 (Mo.App.1983).

15) NEW HAMPSHIRE—*Ramsey v. Anctil*, 106 N.H. 375, 211 A.2d 900 (1965).

16) NEW JERSEY—*Rappaport v. Nichols*, 31 N.J. 188, 156 A.2d 1 (1959).

17) NEW MEXICO—*Lopez v. Maez*, 98 N.M. 625, 651 P.2d 1269 (1982); *MRC Properties, Inc. v. Gries*, 98 N.M. 710, 652 P.2d 732 (1982) and *Porter v. Ortiz*, 100 N.M. 58, 665 P.2d 1149 (Ct.App.1983).

18) OKLAHOMA—*Brigance v. Velvet Dove Restr.* 725 P.2d 300 (Okla.1986).

19) OREGON—*Campbell v. Carpenter*, 279 Or. 237, 566 P.2d 893 (1977).

** Courts and law reviews compiling lists of states recognizing common law dram shop liability includes Kentucky in their lists on the strength of *Pike v. George, supra.*

20) PENNSYLVANIA—*Jardine v. Upper Darby Lodge No. 1973,* 413 Pa. 626, 198 A.2d 550 (1964).

21) SOUTH DAKOTA—*Walz v. City of Hudson,* 327 N.W.2d 120 (S.D.1982).

22) TENNESSEE—*Mitchell v. Ketner,* 54 Tenn.App. 656, 393 S.W.2d 755 (1964).

23) TEXAS—*Poole v. El Chico Corp.,* 713 S.W.2d 955 (Tex.Ct.App.1986).

24) WASHINGTON—*Callan v. O'Neil,* 20 Wash.App. 32, 578 P.2d 890 (1978) and *Halligan v. Pupo,* 37 Wash.App. 84, 678 P.2d 1295 (1984).

25) WISCONSIN—*Sorensen v. Jarvis,* 119 Wis.2d 627, 350 N.W.2d 108 (1984) and *Koback v. Crook,* 123 Wis.2d 259, 366 N.W.2d 857 (1985).

26) WYOMING—*McClellan v. Tottenhoff,* 666 P.2d 408 (Wyo.1983).

## II. STATES WITH COURTS WHICH HAVE RECOGNIZED COMMON LAW LIABILITY AND ALSO STATUTORY LIABILITY

1) INDIANA—*Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847 (1966); I.C. 7.1–5–10–15 (1982 ed.)

2) MICHIGAN—*Thaut v. Finley,* 50 Mich.App. 611, 213 N.W.2d 820 (1973); Mich.Stat.Ann. § 18.993 (Callaghan 1984 Supp.).

3) MINNESOTA—*Trail v. Christian,* 298 Minn. 101, 213 N.W.2d 618 (1973) and *Holmquist v. Miller,* 367 N.W.2d 468 (1985); Minn.Stat. § 340.95 (1984).

4) MONTANA—*Nehring v. LaCounte,* 712 P.2d 1329 (Mont.1986) and *Jevning v. Skyline Bar,* 726 P.2d 326 (Mont.1986); Ch. 1, 1986 Mont.Spec.Sess. 49th Leg.

5) NEW YORK—*Berkeley v. Park,* 47 Misc.2d 381, 262 N.Y.S.2d 290 (1965); N.Y. Gen.Oblig.Law § 11–101 (McKinney 1984 Supp.).

6) NORTH CAROLINA—*Hutchens v. Hankins,* 63 N.C.App. 1, 303 S.E.2d 584, rev. denied, 309 N.C. 191, 305 S.E.2d 734 (1983); N.C.Gen.Stat. § 18B–121 et seq. (1983).

7) OHIO—*Mason v. Roberts,* 33 Ohio St.2d 29, 294 N.E.2d 884 (1973); Ohio Rev. Code Ann. § 4399.01 [Page 1982].

## III. STATES WITH STATUTES IMPOSING DRAM SHOP LIABILITY

1) ALABAMA—Ala.Code § 6–5–71 (1975).

2) CONNECTICUT—Conn.Gen.State § 30–102 (1985).

3) GEORGIA—Ga.Code § 3–3–22 (1982).

4) ILLINOIS—Ill.Stat.Ann. ch. 43, ¶ 135 [Smith-Hurd 1984 Supp.].

5) MAINE—Me.Rev.Stat.Ann. tit. 17, § 2002 (1983).

6) NORTH DAKOTA—N.D.Cent.Code § 5–01–06 (1983 Supp.).

7) RHODE ISLAND—R.I.Gen.Laws § 3–11–1 (1956).

8) UTAH—Utah Code Ann. § 32–11–1 (1983 Supp.).

## IV. STATE COURTS NOT YET RECOGNIZING LIABILITY

1) ARKANSAS—*Yancey v. Beverage House of Little Rock, Inc.,* 291 Ark. 217, 723 S.W.2d 826 (1987).

2) DELAWARE—*Wright v. Moffitt,* 437 A.2d 554 (Del.1981).

3) MARYLAND—*Felder v. Butler,* 292 Md. 174, 438 A.2d 494 (1981) and *Fisher v. O'Connor's, Inc.,* 53 Md.App. 338, 452 A.2d 1313 (1982).

4) NEBRASKA—*Holmes v. Circo,* 196 Neb. 496, 244 N.W.2d 65 (1976).

5) NEVADA—*Hamm v. Carson City Nugget, Inc.,* 85 Nev. 99, 450 P.2d 358 (1969).

## V. STATES WHICH HAVE NOT RULED ON THE SUBJECT

1) KANSAS

2) SOUTH CAROLINA

3) VERMONT

4) VIRGINIA

5) WEST VIRGINIA

STEPHENSON, Justice, dissenting.

I agree with the thrust of the dissent by Justice Vance that a rule of law that has achieved the status of public policy should be addressed by the legislature. However, an analysis of the majority opinion is disturbing to me for the reason that I cannot ascertain the fundamental basis of the opinion.

First, the majority appears to say that maybe *Pike v. George*, by inference, overruled the long line of cases by this court which rejected "dram shop liability." *Pike* acknowledged the rule in this state but apparently turned on the fact that the injured plaintiff was a minor. Also, it is plainly stated that the reason for the holding was that the facts were not fully stated and that we were unwilling to say that there were no circumstances under which a licensee may be held responsible in damages proximately resulting from a violation of KRS 244.080.

It is interesting that in *Pike* the parties concede that Kentucky does not have a dram shop act. Also, the holding of possible liability is presumed on a violation of the statute which by its terms applies to customers and not to third parties injured by a customer.

With a quantum leap the majority also concludes that maybe the statute applies to bootleggers as well, although the statute does not say so. A majority that can reach such a conclusion would have no difficulty in stretching the statute to surmise that it must also encompass third parties injured by the intoxicated customers. This theory results in this court enacting a dram shop statute.

As I said, I cannot understand the basis for the majority holding. To say that *Pike* does much of anything to existing law distorts the holding. None of the prior cases were overruled then or now.

The footnote in the appendix which states that *Pike* recognized common law dram shop liability merely illustrates that the authors of those opinions and law review articles had not bothered to read *Pike*.

As to the liability of social hosts, I can only ask: What happened to "the concept of liability for negligence expresses a universal duty owed by all to all," expressed earlier in the opinion?

The very idea that the distinction between the duty of care owed to a business invitee and the duty owed to a social licensee would make any difference in liability to a third party is a curiosity.

The majority is correct that KRS 244.-080(2) establishes a standard of care owed to a business invitee. This simply proves that all of the talk in the majority about liability to a third person based on the statute is a court amendment to the act.

Logically, there can be no difference in the liability of a social host and a dram shop. The principles are exactly the same, and the injured third party is just as injured by one as the other.

I must confess I have been unable to follow the reasoning of the majority.

Accordingly, I dissent.

VANCE, Justice, dissenting.

Respectfully, I dissent. I do so not because of any feeling on my part that a business establishment, or a social host for that matter, should be exempt from liability when alcoholic beverages furnished by them to another are shown to be a substantial factor in causing injuries to a third person, but because I believe that a substantial change in the law which imposes such liability involves major public policy questions which are properly the prerogative of the General Assembly rather than the courts. The legislative bodies of many states have enacted dram shop laws, but ours has not.

The General Assembly is the representative of the people, and it is the proper body to pronounce the public policy of this state. The function of the court is to interpret the law, not to enact it. The majority opinion does not interpret any existing law; it changes the law. Under common law, the vendor of alcoholic beverages did not have liability such as is imposed here. Under

the previous case law of Kentucky, no such liability existed.

*Pike v. George,* Ky., 434 S.W.2d 626 (1968), is not authority for the imposition of "dram shop" liability. Factually, that case involved the sale of alcoholic beverages by a retail licensee to a minor in contravention of a statute which prohibited such a sale. This case does not involve either a licensed retailer or a minor.

Beyond that, the opinion in *Pike v. George, supra,* refers to the previous Kentucky decisions which held no liability in cases such as this without overruling them, and it was stated, "The general rule is that 'ordinarily a vendor of intoxicating liquors is not at common law accountable to a third person for injury or damage sustained by the latter as a result of the intoxication of the purchaser of the liquor.'" *Pike v. George, supra,* went on to recite the many constitutional, statutory, and case law reflections of the policy of this state offering special protections to minors, and the decision was obviously predicated upon such considerations. It did not establish "dram shop" liability in Kentucky, but held only that the court, as then composed, was unwilling to say that there could never be any circumstance so bad but that liability could be imposed upon a licensee who sells alcoholic beverages to a minor in violation of the statute.

By this opinion we have judicially enacted a "dram shop" law when the General Assembly has declined to do so. The majority opinion limits this to the imposition of liability upon a business establishment. The basis of the majority opinion, however, is that there is a general duty upon every person to exercise ordinary care in his activities to prevent foreseeable injury. This is a generality which pertains equally to a social host as to a business establishment. The majority opinion, therefore, is inexcapably the forerunner of a judicially enacted dram shop law in Kentucky which will impose liability upon a social host as well as a business establishment. The majority opinion reflects the view of the majority of the seven members of this court as to what the public policy of this state should be. The problem is that the determination of policy is not a judicial function but a legislative one.

STEPHENSON, J., joins in this dissent.