ESTATE OF Hal A. VOSNICK, Jr., Carolyn Vosnick, Administratrix and Personal Representative, Plaintiff,

v.

RRJC, INC. d/b/a/ Tazwell's, Beta Theta Pi Fraternity, Chi Omega Sorority, Sandra D. Moore, as Acting Dean of Student Development at Eastern Kentucky University, and Skip Daughtery, Past Vice President of the Office of Alumni Relations at Eastern Kentucky University, Defendants.

No. Civ.A. 02–21–JMH.

United States District Court,
E.D. Kentucky,
Lexington.

Oct. 3, 2002.

Jimmy Dale Williams, Richmond, KY, Teddy B. Gordon, Louisville, KY, for Plaintiff.

John G. McNeill, Christopherson W. Goode, Landrum & Shouse, Lexington, KY, Todd V. McMurtry, Timothy Edward Rogus, Kohnen & Patton, Cincinnati, OH, Neal Smith, Smith Law Offices, Pikeville, KY, Stephen L. Barker, Patricia T. Bausch, Sturgill, Turner, Barker & Maloney, PLLC, Brian H. Stephenson, Clark & Ward, Lexington, KY, for Defendants.

### MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on motion by defendants Beta Theta Pi Fraternity [Record No. 21] and Chi Omega Sorority [Record No. 26] for summary judgment. Fully briefed, the defendants' motions are ripe for review.

### I. FACTUAL OVERVIEW

This case arises out of an automobile accident that occurred on October 5, 2000. Hal A. Vosnick, a student at Eastern Kentucky University in Richmond, Kentucky, was killed in the accident. The decedent's mother, administratrix of the decedent's estate, brought this wrongful death action against—among others—RRJC, Inc. d/b/a Tazwell's (a Richmond bar), Beta Theta Pi Fraternity (a fraternity, which the decedent was apparently in the process of pledging), and Chi Omega Sorority (a sorority that co-sponsored, along with Beta Theta Pi Fraternity, a social function at Tazwell's). The following are the facts as perceived in the light most favorable to plaintiff.

On October 5, 2000 defendants Beta Theta Pi and Chi Omega—respectively, a university-sanctioned fraternity and sorority at Eastern Kentucky University—host-

ed a joint social event at Tazwell's, a local drinking establishment. The decedent, an underage pledge of the fraternity, participated in the event, purportedly a hazing ritual the purpose of which was for the decedent to find his "big sister," a member of the co-sponsoring sorority. The decedent was accompanied at the event by third-party defendant Joshua Mattingly, a member of Beta Theta Pi and the decedent's "big brother" in the fraternity. Mr. Mattingly was of legal age.

At the social event, Tazwell's served alcoholic beverages in large quantities. Both the decedent and Mattingly imbibed. Plaintiff alleges that Tazwell's continued to serve Mattingly alcohol even after it was apparent that he was intoxicated.

At the conclusion of the function the decedent left with Mattingly. Mattingly drove. Approximately forty (40) minutes later, when traveling at a high rate of speed on northbound I–75 in Richmond, Kentucky, Mattingly crashed. The decedent was thrown from the automobile and died. Mattingly was found to have been legally drunk at the time of the accident.

The instant motions concern plaintiff's claims against Beta Theta Pi and Chi Omega. Specifically, plaintiff claims that the fraternity and sorority were negligent in that they failed to supervise properly or control adequately the actions of their members and pledges. Plaintiff seeks to hold the national chapters liable for their local chapters' alleged negligence.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–52, 106 S.Ct. 2505). Furthermore, the evidence and all facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

The parties are in accord that there exists no Kentucky law on the issue presented; that is, whether, under Kentucky law, a cause of action exists against the national chapter of a fraternity or sorority for failure to supervise or control members and pledges, where the fraternity or sorority hosts a social function at which alcohol is served and a member of the fraternity of sorority becomes intoxicated and subsequently injures a third party. Stated differently, the issue is whether a fraternity or sorority has a duty to protect third parties from the negligence of its members. The Court is faced with a question of social host liability.

A. The Applicability of *Grayson Fraternal Order of Eagles, Aerie No. 3738 v. Claywell*

Plaintiff's argument in favor of the existence of a duty of care is founded, predictably, on Kentucky's seminal legal-duty case, *Grayson Fraternal Order of Eagles, Aerie No. 3738 v. Claywell*, 736 S.W.2d 328

(Ky.1987). In holding that a seller of alcohol can be liable to a third party for injuries suffered by the third party at the hands of a patron to whom the tavern served alcohol when the tavern knew or should have known that the patron was intoxicated, the Kentucky Supreme Court provided for so-called "dram-shop" liability. In supporting its conclusion that the tavern owed the injured third party a legal duty of care, the *Grayson* court used sweeping language, stating that "[t]he rule is that every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Id.* at 332. The court went on to note that "[t]his is an old rule, and a good one."

Despite the seeming broad sweep of the *Grayson* decision, however, it must not be overlooked that the holding of that case is not limitless. Whatever those limits, this much is clear: *Grayson* is most emphatically *not* a jurisprudential panacea for litigants faced with an uphill challenge in establishing the existence of a legal duty of care. The Kentucky Court of Appeals recently recognized as much, noting that litigants frequently cite *Grayson*

> as authority for the proposition that Kentucky has adopted a universal duty of care applicable to all people in every situation. *Grayson* is cited often by parties advocating a theory of liability or a cause of action where none previously existed and legal authority is otherwise lacking. Despite its use of the catch phrase "universal duty of care," the Grayson case itself demonstrates that the duty referred to is not without limits. Subsequent decisions illustrate that the duty has been narrowly applied, thereby undermining ... reliance on *Grayson.*

*James v. Wilson,* —— S.W.2d ——, ——, 2002 WL 598330, *9 (2002). In fact, that the holding of *Grayson* was not unqualified was recognized by the *Grayson* court itself. Indeed, the court was careful to add the following "caveat": "[The court] note[s] that the decision in this case is not intended to cover a social host and his guests. In Kentucky traditionally we recognize a distinction between the affirmative duty of care owed to a business invitee and the duty owed to a social licensee, a difference that has been critical...." *Grayson,* 736 S.W.2d at 335 (citations omitted).

Given that the instant case presents a social host scenario, the Court, then, starts from the premise that *Grayson* is inapposite. The *Grayson* court, after all, said as much.

## B. Social Host Liability Under Kentucky Law

Having found *Grayson* of no assistance and having identified the instant case as a social host scenario, the Court would then turn to a review of social host liability under Kentucky law. "Would" is the operative word. The problem is that such a review is impossible, for it appears that Kentucky law on social host liability is nonexistent. The parties do not cite and the Court is unable to find a Kentucky case addressing the liability of social hosts to third parties for the negligent acts of intoxicated guests. To be clear, the Court is faced with a total dearth of precedent; not only is there merely no case law on the question whether fraternities and sororities may be considered social hosts, the Kentucky courts have yet to have occasion to address social host liability at all.

Given the vacuum of precedential authority, the Court is faced with the task of predicting how the Kentucky courts would rule. The Court is aided in this enterprise by a review of the law in other jurisdictions, and by a survey of a related body of

law in Kentucky—specifically, "dram-shop" liability.

### C. Social Host Liability in Other Jurisdictions

Judging from the academic scholarship, other jurisdictions handle the question of social host liability in one of three ways. First, a minority have refused to impose social host liability altogether. Examples include Minnesota, Mississippi, Ohio, Pennsylvania, and Vermont. Donna L. Shumate, *The Recognition of Social Host Liability in North Carolina—Hart v. Ivey,* 15 Campbell L.Rev. 207, n. 86 (1993). Second, some have imposed liability by statute. Examples include Georgia and Oregon.[1] Finally, the majority have imposed liability based on common law negligence principles. This final set is further subdivided into two groups—those that extend social host liability for the provision of alcohol to both minors and adults, and those that limit social host liability to the provision of alcohol to minors only. Among the former group are California, Indiana, Iowa, Massachusetts, and New Jersey. Among the latter group are Michigan, North Carolina, and Wisconsin. *Id.*

Generally speaking, there is a "national trend toward recognizing some form of social host liability." *Id.* It can also be said that "most state courts recognize[ ] a claim against a social host who served alcohol to a minor while a minority defer[ ] the social host policy issue to the state legislature." Kerri Mumford, *Who is Responsible for Fraternity Related Injuries on American College Campuses?,* 17 J. Contemp. Health L. & Pol'y 737, 756 (2001). Further, "the common law does not recognize liability for serving alcohol to those of legal age...." *Id.*

### D. Kentucky Dram–Shop Law

To be sure, dram-shop liability must be distinguished from social host liability. The "critical" difference, as noted by the *Grayson* court in its "caveat," *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell,* 736 S.W.2d 328 (1987), is that in the former scenario the intoxicated person who commits the negligent act is a business invitee, whereas in the latter scenario the intoxicated tortfeasor is a social licensee. Still, however, an inspection of Kentucky dram-shop liability law is instructive, for reasons that become clear below.

Unlike some states, Kentucky does not have a Dram Shop Act. In *Grayson,* however, the Kentucky Supreme Court recognized a cause of action against business who sell alcohol to patrons when the business knows or should know that such patron is intoxicated. It is significant to note that, unlike in the instant case, the alcohol-provider in *Grayson* was negligent per se; that is, the bar furnished alcohol to a person actually or apparently under the influence, in violation of K.R.S. § 244.080(2).

One year after *Grayson* was decided, the Kentucky General Assemby enacted K.R.S. § 413.241. According to the new statute, "the consumption of intoxicating beverages, rather than the serving, furnishing, or sale of such beverages, is the proximate cause of any injury ... inflicted by an intoxicated person upon himself or another person." K.R.S. § 413.241(1). The statute further provided that

> no person ... who sells or serves intoxicating beverages to a person over the age for the lawful purchase thereof, shall be liable to such person ... for any injury suffered ... because of the intoxi-

---

1. To be precise, these jurisdictions have imposed social host liability not by enacting new statutes specifically so instructing, but rather by construing existing statutes to apply to the social host situation. *Id.*

cation of the person to whom the intoxicating beverages were sold or served, unless a reasonable person under the same or similar circumstances should know that the person served is already intoxicated at the time of serving. K.R.S. § 413.241(2). Also, the statute specified that "[t]he intoxicated person shall be primarily liable with respect to injuries suffered by third persons." K.R.S. § 413.241(3).

As an initial matter, it should be noted that the plain language of subsection (1) seems to amount to a specific rejection of social host liability. Construed in the context of the chapter title, however—Limitation on Liability of Licensed Sellers or Servers of Intoxicating Beverages—the Court finds it unlikely that the General Assembly intended the statute to apply to the social host scenario. There is a second point: there exists an undeniable tension between subsection (1) and subsections (2) and (3). The problem is this: If the consumption—and not the sale—of alcoholic beverages is the proximate cause of injury (as provided by subsection (1))—how can the seller/server ever be liable at all (as obviously contemplated by subsections (2) and (3))? This problematic statutory inconsistency was recognized by the Supreme Court of Kentucky itself in *DeStock # 14, Inc. v. Logsdon*, 993 S.W.2d 952, 957 (Ky.1999). Stating that the "apparent conflict" between the sections "should be harmonized if possible," the Supreme Court attempted to do exactly that. In the opinion of this Court, it was an impossible task.

### E. Predicting Kentucky Law

Having studied extra-jurisdictional law and Kentucky's law on the related subject of dram-shop liability, several conclusions can be drawn. First, it may be said that it is the "majority view" that a third party has no cause of action against a social host for injuries suffered as the result of the negligent conduct of an adult guest who is legally entitled to consume alcohol. Also, the legislative reaction to the *Grayson* decision indicates that the General Assembly has taken a "consumption" view of proximate cause; that is, it has indicated that culpability in these situations is to fall—at least, to a greater extent—on the shoulders of the intoxicated person, not the seller/server. Clearly there is a general reluctance to recognize liability beyond that of the immediate tortfeasor.

In the final analysis, the Court concludes that the Kentucky courts would recognize a cause of action against social hosts, but also that they would proceed cautiously. The Court predicts that Kentucky would recognize a cause of action against social hosts, but strictly for serving alcohol to minors only. The Court predicts that the Kentucky courts would find that allowing a cause of action against social hosts who do no more than provide alcohol to guests of age would be effectively to abolish the requirement of proximate cause.

### F. Application of Law to Facts

■ Applying the rule as derived above, the plaintiff in the instant case has not stated a claim. Because Mattingly—the driver of the automobile in which plaintiff was a passenger—was of age, the defendant fraternity and sorority cannot be liable as social hosts. As alleged by plaintiff, they did no more than furnish alcohol to a guest legally permitted to consume alcohol.

■ As a final note, it is significant that, even assuming that Kentucky would recognize a cause of action against defendant fraternity and sorority on the facts of this case, plaintiff has proffered absolutely no evidence to support her theory. In fact, the only evidence in the record of any kind is that of defendant sorority, evidence that takes the form of an affidavit outlining the testimony of an official of the national

chapter to the effect that the local chapter acts independently of the national chapter.[2] This affidavit is uncontroverted. In the absence of proof, of course, summary judgment is undoubtedly appropriate.

## IV. CONCLUSION

The question presented by this case—that is, whether national fraternities may be liable as social hosts for the negligent acts of their intoxicated members—is one of first impression in Kentucky. Reviewing the case law from other jurisdictions as well as related law in Kentucky—specifically Kentucky law on dram-shop liability—the Court predicts that Kentucky would recognize such a cause of action, but only where the fraternity served alcohol to a minor. Where, as here, the fraternity merely furnished alcohol to an adult member, no cause of action lies.

Further, even assuming that Kentucky would recognize a cause of action where the fraternity has done no more than provide alcohol to an of-age member, plaintiff has proffered no proof that the national fraternity has any involvement with the local chapter. Absent such proof, summary judgment is appropriate.

Accordingly,

**IT IS ORDERED**

(1) That the motions for summary judgment of defendants Beta Theta Pi Fraternity [Record No. 21] and Chi Omega Sorority [Record No. 26] be, and the same hereby are, **GRANTED;** and

(2) That Beta Theta Pi Fraternity and Chi Omega Sorority be, and the same hereby are, **DISMISSED** from this action.

---

**2.** The Court notes that other courts weighing the question whether—and under what circumstances—a national chapter may be held accountable for the negligence of a local chapter have required at least *some* proof that the national chapter directed, influenced, or controlled the actions of the local chapter. *See, e.g.,* Spring J. Walton et al., *The High Cost of Partying: Social Host Liability for*

*Fraternities and Colleges,* 14 Whittier L.Rev. 659, 667 (1993) (reviewing cases in which courts have dismissed suits against national fraternities because the local chapters neither controlled nor participated in day-to-day management, and therefore could not have provided the "substantial assistance" necessary to hold them responsible).