Mildred WALDON, as Administratrix of the Estate of Magdalene Smith, Deceased, and as Next Friend of Keith Smith and Rufus Smith, Minors, Appellant,

v.

HOUSING AUTHORITY OF PADUCAH, City of Paducah and Albert Williams, Appellees.

No. 90–CA–2125–MR.

Court of Appeals of Kentucky.

Dec. 6, 1991.

Rehearing Denied Feb. 21, 1992.

Discretionary Review Dismissed by Supreme Court May 21, 1993.

Motion to Depublish Denied by Supreme Court May 21, 1993.

Rodger W. Lofton, Paducah and James E. Story, Eddyville, for appellant.

John P. Rall and Teresa Moss Groves, Boehl Stopher Graves & Deindoerfer, Paducah, for appellee, Housing Authority of Paducah.

Thomas J. Keuler, Paducah, for appellee, City of Paducah.

Albert Williams, pro se.

Before CLAYTON, McDONALD and MILLER, JJ.

McDONALD, Judge.

Appellant's decedent, Magdalene Smith, was shot and killed outside her residence located in Elmwood Court, a public housing project in Paducah. This action was commenced against both the housing authority and the city for their alleged negligence which resulted in Smith's death.[1] The trial court granted the appellees' motion to summarily dismiss, having determined that the action was barred as a matter of law by KRS 411.155. The constitutional challenge to this statute by appellant was rejected by the trial court. The order appealed from also determined the claim against the city was barred by sovereign immunity.

■ The critical issue before us is the constitutionality of KRS 411.155 which provides:

411.155. Liability for damages resulting from criminal use of a firearm by another person.—

(1) A person or entity shall not be held liable for damages of any kind resulting from injuries to another person sustained as a result of the criminal use of any firearm by a third person, unless the person or entity conspired with the third person to commit, or willfully aided, abetted, or caused the commission of, the criminal act in which the firearm was used.

The appellant offers us a buffet of constitutional provisions which she argues this statute offends, including §§ 14, 54 and 241 of our State Constitution and the 14th Amendment to the United States Constitution. Our research into cases concerning § 14 of our State constitutional provision reveals a legal morass and little in the way of guidance. Nevertheless, we agree that our Constitution "prohibits the abolition or diminution of legal remedies for personal injuries." *University of Louisville v. O'Bannon*, Ky., 770 S.W.2d 215, 217 (1989). In discussing § 14 the court in *Ludwig v. Johnson*, 243 Ky. 533, 49 S.W.2d 347, 351 (1932), held:

It was the *manifest purpose* of the framers of that instrument *to preserve and perpetuate* the common-law right of a citizen injured by the *negligent act of another* to sue or recover damages for his injury. The imperative mandate of section 14 is that every person, for an injury done him in his person, shall have remedy by due course of law.... The Constitution guarantees to him his right to a day in court for the purpose of establishing the alleged wrong perpetuated on him and recovery of his resultant damages. (Emphasis added).

Regardless of its purpose, KRS 411.155 patently offends § 14 of our Constitution, as well as § 54 which prevents the General Assembly from limiting the amount of damages recoverable.

The housing authority argues that regardless of the statute's viability, it is entitled to a judgment as a matter of law. It asserts that the statute is merely a codification of "well-established Kentucky common law" and since the appellant did not and cannot show it aided, abetted or participated with Williams, the appellant cannot prevail on her claim. We disagree that the common law of this jurisdiction is as depicted by this appellee.

■ In Kentucky, "[t]he rule is that every person owes a duty to every other person to exercise ordinary care in his activities to prevent *foreseeable* injury." *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, Ky., 736 S.W.2d 328 (1987). (Emphasis added). In addressing questions of proximate cause, recent cases apply the general principles of foreseeability in those cases involving intervening or superseding cause. *See generally Montgomery Elevator Co. v.*

---

**1.** Except for filing the complaint, appellant has not pursued her claim against Williams, probably because of his residence in the penitentiary.

*McCullough,* Ky., 676 S.W.2d 776 (1984). Even an intervening criminal act does not relieve one for liability for his or her negligent acts or omissions, where the criminal act is a reasonably foreseeable consequence of the defendant's negligent act. *See, e.g., Wheeler v. Andrew Jergens Company,* Ky., 696 S.W.2d 326 (1985).

The housing authority's reliance on *Adkins v. Ashland Supermarket,* Ky.App., 569 S.W.2d 698 (1978), is misplaced. In that case a patron of a grocery store was injured during a robbery and alleged negligence on the part of the store's operator for failing to give in to the robber's demands. This Court held an "owner or operator of premises ... is not an insurer for the safety of his patrons and is not required at his peril to keep the premises absolutely safe," and that there is "no absolute duty ... to accede to criminal demands." Although *Adkins* states the court was not convinced that Kentucky had adopted certain pertinent sections of the *Restatement of Torts 2d,* including § 292, § 302B and § 449, our highest court has adopted § 449 in *House v. Kellerman,* Ky., 519 S.W.2d 380 (1974), *see Montgomery Elevator Co., supra* at 779–780, and § 302B was relied on in the court's holding in *Wesley v. Page,* Ky., 514 S.W.2d 697 (1974). Section 302B of the *Restatement of Torts* provides:

> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

> Section 449 reads:

> If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

█ A landlord is "not a guarantor of the tenants' safety." *See Davis v. Coleman Management Co.,* Ky.App., 765 S.W.2d 37 (1989). However, a landlord's conduct can make him liable to his tenant for the criminal acts of third persons, if the landlord fails to take reasonable steps to avoid injury from reasonably foreseeable criminal acts. *See* Annot. 43 A.L.R.3d 331 (1972).

█ The evidence in this record shows that the personnel at the housing authority were told by the decedent and others that Williams had made repeated threats to kill Smith. The appellee was also aware that Williams was residing (without its permission) in the complex with his daughter or other relatives, yet it took no action to evict him or otherwise discourage his presence in the area.[2] And despite the knowledge of Williams' threats against one of its tenants, as well as of the frequent occurrence of crimes at the complex, there were no security guards retained to patrol the area at the time of the shooting. The inaction of the appellee to remove Williams from the housing complex and its failure to provide security guards, as had been done previously, puts its conduct within the parameters of both §§ 302B and 449. *See also* 3A C. Antieau, *Local Government Law,* § 30F.04 (1986). Clearly a jury question is presented on the issue of proximate cause of Smith's death precluding summary judgment. Thus, that portion of the judgment dismissing appellant's claim against the Housing Authority of Paducah is reversed and remanded for further proceedings.

█ Although we have held that appellant may maintain this action against the Housing Authority of Paducah, we find no error in the dismissal of the complaint against the city. Certainly there is no question that the city is not protected by immunity from tort liability, *see Haney v. City of Lexington,* Ky., 386 S.W.2d 738 (1965); *Gas Service Co., Inc. v. City of London,* Ky., 687 S.W.2d 144 (1985); nor is the housing authority so immune. *Calvert*

---

**2.** Despite the housing authority's allegation in its brief that there is no evidence that Williams was an "illegal resident" at the time of the shooting, there is considerable evidence that not only he lived there but that those in charge of the complex were so informed.

*Investments, Inc. v. Louisville & Jefferson County Metropolitan Sewer District,* Ky., 805 S.W.2d 133 (1991). Had the appellant articulated a claim of negligence involving the city or its employees or agents, summary dismissal would not be appropriate. *Id.* However, she does not allege that the city breached any duty to her other than a vague allegation of failure to provide adequate police protection to the area. Such a claim, absent an allegation of a "special duty" owed the victim, cannot form the basis of a tort claim. *See Bolden v. City of Covington,* Ky., 803 S.W.2d 577 (1991).

The appellant also appears to argue that the city is vicariously liable for the alleged wrongs committed by the housing authority. However, the Housing Authority of Paducah is an entity totally separate from that of the appellee city. Despite appellant's claim to the contrary, there is no evidence that the city had any proprietary interest in Elmwood Court. The complex is owned and operated by the housing authority, a municipal corporation created pursuant to KRS Chapter 80 *et seq.* KRS 80.050 provides that such an entity has "the power to contract and be contracted with, to sue or be sued, and to adopt a seal and alter it at will." KRS 80.180 gives the authority the right to "operate, manage and control low-cost housing in their entirety," which would include the right to provide adequate security for its tenants. The housing authority had, prior to the shooting, provided security at Elmwood Court, although none was provided the day of the Smith death. Thus, although the trial court erroneously couched its dismissal of the city in terms of sovereign immunity, it is the separate corporate identity of the housing authority which relieves the City of Paducah from liability for the alleged torts. *See City of Louisville v. Frank's Guardian,* 154 Ky. 254, 157 S.W. 24 (1913), and *Inco, Ltd. v. Lexington–Fayette Urban County Airport Board,* Ky.App., 705 S.W.2d 933 (1985) (J. Wilhoit, concurring).

Accordingly, the judgment of the McCracken Circuit Court is affirmed in part, and reversed and remanded in part for further proceedings consistent with this opinion.

CLAYTON, J., concurs.

MILLER, J., concurs in result.