Holly Anne **OAKLEY**, Appellant,

v.

**FLOR–SHIN, INC.**, Appellee.

No. 96–CA–002109–MR.

Court of Appeals of Kentucky.

March 13, 1998.

Robert E. Wier, Lexington, for Appellant.

Ronald L. Green, E. Holt Moore, III, Lexington, for Appellee.

Before GUIDUGLI, JOHNSON and SCHRODER, JJ.

### *OPINION*

JOHNSON, Judge.

Holly Anne Oakley (Oakley) appeals from the judgment of the Woodford Circuit Court entered on June 5, 1996, which summarily dismissed her tort claim against the appellee, Flor–Shin, Inc. (Flor–Shin). We reverse and remand.

During the night of February 18 and 19, 1994, Oakley, then eighteen (18) years old, was sexually assaulted by William E. Bayes (Bayes), an area supervisor for Flor–Shin. The assault occurred at the K–Mart Department Store in Versailles, Kentucky, where Oakley was a part-time employee and where Bayes was assigned to work by Flor–Shin which had a contract with K–Mart to maintain its floors. On the evening of the assault, Oakley and Bayes were the only two employees in the store, a not uncommon arrangement of which Flor–Shin was aware. On September 22, 1994, Bayes pled guilty to the crimes of sexual abuse in the first degree, sexual misconduct and unlawful imprisonment arising from his assault of Oakley. He was sentenced to serve a one-year term of imprisonment, but placed on supervised probation for five years.

Oakley sued both Bayes and Flor–Shin on January 13, 1995. In her complaint she sought damages from Bayes for assault, battery, false imprisonment and the intentional infliction of emotional distress caused by his wrongful conduct. She also sought damages from Flor–Shin under the theory of vicarious liability (alleging that Bayes was acting within the scope of his employment when he assaulted her) and for its negligence in hiring Bayes, a person she alleged was "incompetent and unfit to perform in the capacity he was hired" because of his "malicious, dangerous, and violent nature[.]" She also alleged that Flor–Shin "knew or should have known that a person in [her] position would be subjected to an unreasonable risk of harm from Defendant, Bayes," and that Flor–Shin "was on notice actual and/or constructive that Defendant, Bayes, was incompetent and unfit[.]"

On June 5, 1996, the trial court granted Flor–Shin's motion for summary judgment and held that the employer was not liable as a matter of law under either theory advanced by Oakley. On July 17, 1996, the trial court entered an agreed order making the summary judgment final and appealable and abating the trial against Bayes indefinitely pending the outcome of Oakley's appeal of the summary judgment.

The crux of this appeal is whether, as a matter of law, an employer can be held directly liable for injuries sustained by a third person caused by the criminal acts of its employee under the theory of negligent hiring.[1] Relying on *Central Truckaway System, Inc. v. Moore*, 304 Ky. 533, 201 S.W.2d 725 (1947), Flor–Shin argues that in this jurisdiction, an employer is never required to answer to a third person for its lack of care in hiring or retaining an employee. The trial court accepted this argument and in dismissing the action against Flor–Shin reasoned as follows:

In view of the Central Truckaway case, which this Court believes is the latest pronouncement of law on this subject, this Court believes that no liability can attach

1. Oakley conceded in her response to Flor–Shin's motion for summary judgment that Flor–Shin was not vicariously liable for Bayes' behavior.

against Flor–Shin for negligent hiring, retention, or supervision, since Mr. Bayes's alleged acts did not result in injury to a fellow servant, but instead, resulted in injury to a third party.

Flor–Shin insists that this Court is "compelled" to follow the "well-settled," "good law" established in *Central Truckaway*. However, we conclude that the issue is not as clear nor as settled as Flor–Shin contends.

The issue of negligent hiring was not raised in *Central Truckaway*. The injured plaintiff in *Central Truckaway* sought damages for injuries he and his wife sustained when one of Central Truckaway's trucks, operated by one of Central Truckaway's employees, collided with his vehicle. Central Truckaway's employee, Robert Derrett, was intoxicated at the time he drove the truck on top of the plaintiff's vehicle. Central Truckaway attempted to avoid liability on the grounds that (1) Derrett was not acting within the scope of his employment at the time of the accident, and (2) that it had used ordinary care in its selection of Derrett and thus "could not have anticipated that he would be intoxicated at the time of the accident." *Id.* at 726. In affirming the verdict in favor of the plaintiff, the Court held (1) that Derrett was acting in the scope of his employment, and (2) that Central Truckaway was not entitled to the defense that it used ordinary care in hiring Derrett, as such it "is not a defense where liability to a third person is predicated upon negligence of a servant under the doctrine of respondeat superior." *Id.* at 728. In discussing the latter defense, the Court stated:

> Nor are we impressed with the proposition urged under 1(b), supra, viz., that the master may exonerate himself from liability for the negligence of his servant by showing that he used ordinary care in the selection of the servant. This doctrine is a part of the fellow servant rule, and is succinctly stated in *Ballard's Adm'x v. Louisville & N.R. Co.*, 128 Ky. 826, 110 S.W. 296, 297, 33 Ky. Law Rep. 301, 16 L.R.A.N.S. 1052: "The master must exercise ordinary care in the selection of his servants and if he fails to exercise such care, *and one of the servants is injured by the incapacity of another servant,* the master is liable, but the incapacity of the *fellow servant* must relate to the duties required of him by the master."

> But the rule has no application in cases where the injuries are inflicted by a servant upon a third person, as is pointed out in 35 Am.Jur., Sec. 548, p. 978, wherein it is said: "The rule as to the liability of a master on the ground of want of care in the selection of competent servants is a part of the fellow servant rule, and is applicable only in actions by servants against their master for injuries caused by the negligence of fellow servants."

> The converse likewise is true, viz., the exercise of reasonable or ordinary care in the selection of competent servants is not a defense where liability to a third person is predicated upon negligence of a servant under the doctrine of respondeat superior.

*Id.* (emphases original).

As an intermediate appellate court, we are acutely aware of our limitations and of our responsibility to follow the precedents of our Supreme Court and its predecessor Court. Supreme Court Rule 1.030(8)(a). Likewise, we are aware that the legal holding of a case is to be followed as precedent and not mere dictum from that case. We are bolstered in our belief that *Central Truckaway* was not a judicial rejection of the theory under which Oakley seeks redress by the discussion of the tort in *Smith's Adm'r v. Corder*, Ky., 286 S.W.2d 512 (1956). In *Corder* the estate of a man killed by an employee of the Stearns Coal and Lumber Company sought damages against the employer for its negligence in getting the employee appointed as a police officer when the company had knowledge that the employee

> was "a man of violent and dangerous disposition who drank intoxicants very heavily and frequently"; that he was "especially dangerous and violent" when "under the influence of liquor" and that before he was commissioned as a special police officer he had "committed numerous and sundry acts of violence to the persons of numerous citizens, including the taking of at least one life."

*Id.* at 513–514. The Court described the plaintiff's theory of negligence as "novel." *Id.* at 513.

> The ground, it is submitted, is personal fault in the negligent initiation of a situation or condition calculated to harm others. To underline the point, the appellant expressly disavows any claim of defendant's liability on the ground of imputed fault resting on Corder's agency or under the doctrine of respondeat superior.

*Id.* at 514. If *Central Truckaway* indeed settled the issue of the viability of the tort of negligent hiring by third persons, it would not have been considered a "novel" issue nine years later. Nor, we believe, would the Court in *Corder* have gone to the trouble to analyze the tort and address the merits of the complaint if recovery under any set of facts was impermissible as a matter of law. Although the summary judgment in favor of the employer was affirmed in *Corder*, the ruling was not premised on Kentucky's failure to recognize a claim for negligent hiring by a third person. The employer was absolved of any responsibility for its negligence, if any, as the homicide of plaintiff's decedent did not occur on the employer's property and the employee's appointment "was confined to the company's premises." *Id.* at 515. The Court declined to hold the employer liable for wrongful acts not committed on its property reasoning that "there were too many intervening inconsequent events and imponderable facts to attach legal liability for the homicide upon the defendant company." *Id.*

Oakley makes a compelling argument that the tort of negligent hiring comports with those tort principles emanating from recent pronouncements of our appellate courts. Specifically, she relies upon *Waldon v. Housing Authority of Paducah,* Ky.App., 854 S.W.2d 777 (1991), *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell,* Ky., 736 S.W.2d 328 (1987), and *M & T Chemicals, Inc. v. Westrick,* Ky., 525 S.W.2d 740 (1974). These cases have emphatically affirmed that "[e]very person owes a duty to every other person to exercise ordinary care in his activities to prevent any foreseeable injury from occurring to such other person."

*Westrick, supra* at 741; *Waldon, supra* at 778; and *Grayson, supra* at 332.

Our research reveals that most jurisdictions recognize the tort of negligent hiring. *See Carlsen v. Wackenhut Corporation,* 73 Wash.App. 247, 868 P.2d 882 (1994) (teen-age girl sexually assaulted by security guard at rock concert permitted to sue guard's employer for negligent hiring even though there was no evidence that employer knew of prior criminal record); *Evan v. Hughson United Methodist Church,* 8 Cal.App.4th 828, 10 Cal. Rptr.2d 748 (1992) (child sexually molested by pastor entitled to proceed against church and church conference on theory of negligent hiring of pastor where pastor had been censored for inappropriate sexual behavior at previous employment); *J. v. Victory Tabernacle Baptist Church,* 236 Va. 206, 372 S.E.2d 391 (1988) (mother of ten-year-old raped by church employee allowed to pursue claim of negligent hiring against church and its pastor where defendants knew or should have known of employee's recent conviction of sexual assault on a young girl and nevertheless "entrusted [him] with duties that encouraged him to come freely into contact with children" and gave him "keys that enabled him to lock and unlock all of the church's doors"); *Copithorne v. Framingham Union Hospital,* 401 Mass. 860, 520 N.E.2d 139 (1988) (rape victim allowed to pursue claim against hospital for its negligence in extending staff privileges to doctor where hospital was aware of other allegations of past sexual misconduct by the doctor); *Ponticas v. K.M.S. Inv.,* 331 N.W.2d 907 (Minn.1983) (tenant raped by manager of apartment complex allowed to maintain action for negligent hiring because landlord/employer failed to make an adequate investigation of manager's employment background before entrusting manager with pass key); and *Joiner v. Mitchell County Hospital Authority,* 125 Ga.App. 1, 186 S.E.2d 307, 309 (1971) (affirmed at 229 Ga. 140, 189 S.E.2d 412 (1972)) (plaintiff allowed to proceed against hospital on allegations that it was negligent in selection of physician, that doctor was licensed and recommended by other doctors on staff did "not overcome the averments that the hospital was negligent in failing to exercise care in determining his

professional competency"). *See also* Janet E. Goldberg, *Employees with Mental and Emotional Problems—Workplace Security and Implications of State Discrimination Laws, The Americans with Disabilities Act, The Rehabilitation Act, Workers' Compensation, and Related Issues,* 24 Stetson L.Rev. 201, 215–222 (1994).

■ In addition to sections 302 B and 449 of the *Restatement (Second) of Torts* discussed in *Waldon, supra,* the parameters of the tort are defined in *Restatement (Second) of Agency* § 213 (1958), as follows: "A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: ... (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others[.]" Accordingly, we agree with Oakley that the established law in this Commonwealth recognizes that an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person. *See Waldon,* 854 S.W.2d at 779. *See generally Sheehan v. United Services Automobile Assoc.,* Ky.App., 913 S.W.2d 4 (1996); and *Estep v. B.F. Saul Real Estate Investment Trust,* Ky.App., 843 S.W.2d 911 (1992).

Thus, under the standard articulated in *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991), we have examined the record to determine whether there is a genuine issue of material fact as to whether Flor–Shin knew, or reasonably should have known, that (1) Bayes was unfit for the job for which he was employed, and (2) whether his placement or retention in that job created an unreasonable risk of harm to Oakley. We believe such an issue of fact exists in this case. Thus, the issue of Flor–Shin's liability is for a jury to decide.

■ The evidence upon which Oakley relies includes the following: (1) Bayes had an extensive criminal record prior to being hired by Flor–Shin which included convictions for burglary, theft and bail jumping, (2) in 1991 Bayes was arrested for criminal attempt to commit rape in the first degree and for carrying a concealed deadly weapon, (3) Flor–Shin had knowledge of Bayes' criminal background by virtue of his relationship to Charles Martin (brother-in-law by marriage), Flor–Shin's regional manager who hired Bayes, or should have known of Bayes' criminal background had it conducted a criminal background check pursuant to its established policy and agreement with K–Mart, and (4) Flor–Shin knew that Bayes would be locked inside the K–Mart store with a single K–Mart employee. Flor–Shin relies on *Smith's Adm'r v. Corder, supra,* for its argument that the above recitation of facts was insufficient as a matter of law to allow Oakley to proceed to trial. However, as discussed earlier, *Corder* was resolved in the employer's favor because its employee's criminal acts did not occur on or near the employer's premises, and not because it was not foreseeable that he would injure someone. That distinction is critical, as in the instant case, it was Flor–Shin's knowledge of Bayes' criminal propensities, coupled with its knowledge that he would literally be locked inside the work place with one other person, that creates, in our opinion, an issue of fact for the jury.

Accordingly, the judgment of the Woodford Circuit Court is reversed and the matter is remanded for further proceedings consistent with this Opinion.

All concur.