Gloria ROSS, et al.,

v.

Tammy PAPLER, et al.

No. 5:97CV–233–J.

United States District Court,
W.D. Kentucky,
Paducah Division.

Oct. 8, 1998.

Cynthia E. Sanderson, Paducah, KY, Phillip L. Davidson, Nashville, KY, for Plaintiffs.

Tammy Papler, Clarksville, TN, pro se.

Ronnie Papler, Clarksville, TN, pro se.

Charles D. Walter, Boehl, Stopher & Graves, Paducah, KY, Michael Gigandet, Ortale, Kelley, Herbert & Crawford, Nashville, TN, for Defendant, Louise Seawright.

## MEMORANDUM OPINION
## AND ORDER

JOHNSTONE, Senior District Judge.

This matter is before the Court on Defendant Seawright's Motion for Summary Judgment [Dkt. # 25]. For the reasons stated herein, Defendant's Motion is Granted and Plaintiffs' claims against Defendant Seawright are dismissed.

### I. Background

In September 1994, Plaintiff Gloria Ross began work at the New Life Massage Parlor. Two weeks later, on September 20, 1994, Gloria Ross was shot twice in the head and stabbed in the throat by an unknown assailant. Plaintiff's husband Ryan Ross and her two children, Lerandle and Shanice Ross filed a negligence action against Tammy and Ronnie Papler, owners of the New Life Massage Parlor, and Louise Seawright, owner of the building where the massage parlor was located.

Essentially, the complaint alleged that the Paplers failed to maintain a safe working environment and failed to warn Plaintiff of the potential for danger associated with the business. The complaint also alleged that Defendant Seawright failed to ensure that her building was maintained as a safe place for employees to work and that Defendant Seawright rented the building to the Paplers knowing that there was a possibility of danger and violence to persons coming on her property. [Dkt. # 20].

Default judgment was entered against Defendants Tammy and Ronnie Papler on April 20, 1998 for failure to respond or otherwise defend against this action. [Dkt. # 18]. Defendant Seawright moved for summary judgment on September 1, 1998. A response and reply followed.

### II. Summary Judgment Standard

A motion for summary judgment is only granted when "... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of showing that there are no genuine issues of material fact is on the moving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court construes the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *White v. Turfway Park Racing Ass'n., Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). When reviewing a motion for summary judgment, the court "must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (citations omitted).

### III. Applicable Case Law

Because this case involves parties from different states, this Court must apply the forum state's common law on the substantive matters involved herein. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). An examination of Kentucky law reveals that in general, a landlord is not liable for injuries sustained by his tenant or the tenant's guests, *Starns v. Lancaster,* 553 S.W.2d 696 (Ky.App.1977), for a "landlord is not a guarantor of the tenants' safety." *Davis v. Coleman Management Co.,* 765 S.W.2d 37 (Ky.App.1989). As with any generality though, there are exceptions for "a landlord's conduct can make him liable to his tenant for the criminal acts of third persons, if the landlord fails to take reasonable steps to avoid injury from reasonably foreseeable criminal acts." *Waldon v. Housing Authority of Paducah,* 854 S.W.2d 777 (Ky.App.1991).

In *Waldon,* a tenant was shot and killed outside her residence in a public housing project. The evidence showed that the housing authority had been told by the victim that the assailant had made repeated threats to kill her. *Id.* at 779. The housing authority was also aware that the

assailant was living in the same housing project as the victim and that there were frequent occurrences of crime. *Id.* Despite this knowledge, the housing authority did not evict the assailant from the housing project nor did it provide security guards. *Id.* Accordingly, the *Waldon* court held that summary judgment was inappropriate because there were issues of fact as to whether the housing authority's failure to act was a proximate cause of the tenant's murder. *Id.*

In determining the foreseeability of such an act, the Kentucky Court of Appeals stated that "what constitutes ordinary care or reasonable foreseeability varies with the particular circumstances. It is proportionate to the danger to be apprehended." *Napper v. Kenwood Drive–In Theatre Co.,* 310 S.W.2d 270 (1958). There, a theatre owner was sued for negligence because three patrons were assaulted by a group of young men at the outdoor movie theatre. *Id.* at 271. The theory of the case was that the theatre owner was negligent in letting the theatre become disorderly. *Id.* The circuit court granted summary judgment to the defendant. *Id.* On appeal, the appellate court stated that if the proprietor "knows of activities or conduct of other patrons or third persons which would lead a reasonably prudent person to believe or anticipate that injury to a patron might be caused, it is the proprietor's duty to stop such conduct if he reasonably can." *Id.* The appellate court affirmed the circuit court's decision granting defendants summary judgment because "no liability was established, for there was an absence of evidence of reasonable knowledge or reasonable anticipation" that the boys involved would pick a fight with the plaintiffs. *Id.* at 272.

■ For Plaintiffs to maintain their negligence cause of action in this case, they must establish that Defendant Seawright owed a duty to Plaintiff, which she breached, and that breach of duty was causally connected to Plaintiff's death. *See e.g., Grisham v. Wal–Mart Stores,*

*Inc.,* 929 F.Supp. 1054, 1056 (E.D.Ky. 1995), *affirmed* 89 F.3d 833 (6th Cir.1996). The most important factor in this analysis is foreseeability because an intervening criminal act will not relieve a defendant from liability for her alleged negligent acts or omissions if the criminal act was "a reasonably foreseeable consequence of [her] negligent act." *Waldon,* 854 S.W.2d at 779.

## IV. Analysis

■ Defendant Seawright argues that "Plaintiffs have failed to sustain their burden to show proof that it was reasonably foreseeable that an assailant would enter upon the premises, apparently being let in by the workers at the premises, and would undertake what appears to be a premeditated, cold, calculated crime of killing Gloria Ross and her co-worker in what could best be described as a quick and brutal fashion" [Dkt. # 25, p. 11].

An examination of the record reveals that prior to Mrs. Ross' murder, no assaults had occurred on Defendant Seawright's premises. [Dkt. # 24, p. 16]. In fact, there had been no violent crimes of any type in the general vicinity of Defendant Seawright's property for the three to four years preceding Plaintiff's death, nor had there been any threats to harm anyone at the New Life Massage Parlor. [Dkt. # 24, p. 17 & 18]. There had been a report of "shots fired in the area" the previous year, but the police did not find any bullets or damage from gunfire. Essentially, the police were uncertain as to whether someone had heard gunshots or just a loud bang or noise. [Dkt. # 24, p. 20]. In addition, Plaintiff Ross, the victim's husband stated that his wife never expressed any concerns about her safety or the security at the New Life Massage Parlor. [Dkt. # 23, p. 22 & 38].

Plaintiffs respond by stating that Defendant Seawright "was informed by the military police that other activities, activities outside the scope of the [Paplers'] lease agreement, might be ongoing on her prop-

erty .... [and that Defendant Seawright] was also aware that if her business was being used as a place of prostitution that violence could occur" [Dkt. # 30, p. 6]. Plaintiffs contend that instead of Defendant Seawright "going to the premises and checking out the business, she stuck her head in the sand, and continued to collect the rent" [*Id.*].

The record shows that when deposed, Defendant Seawright stated that the military police had called her and implied that the business was a front for prostitution. [Dkt. # 27, p. 12]. Defendant Seawright also acknowledged that her friends had heard "rumors" about the ongoings at the massage parlor. [Dkt. # 27, p. 14]. In response to hearing this, Defendant Seawright stated that she spoke with the town mayor and that he informed her that they were watching the massage parlor but could not tell if anything illegal was going on, and that he would contact her if anything developed. [Dkt. # 27, p. 15]. When asked, "Are you aware that at places where houses of prostitution are, that at those places acts of violence can occur" Defendant Seawright responded, "I'm sure they could." [Dkt. # 27, p. 18]. Accordingly, Plaintiffs argue that Defendant Seawright was put on notice that acts which could lead to violence were occurring on her property and that she should have taken some action to stop the Paplers from using her property illegally.

However, although Defendant Seawright may have heard rumors about what was going on in her building, there is no concrete evidence showing that the massage parlor was a house of prostitution. Nor is there any evidence in the record indicating that Defendant Seawright should have reasonably foreseen that such a violent crime would occur as a result or her not evicting the Paplers. The record shows that Defendant Seawright entered into the lease with the Paplers in February 1992, and until Plaintiff was murdered in September 1994, some two and a half years later, no violent acts had occurred on her property or in the general vicinity of her property. The record also shows that the police had no knowledge of any threats being made against the employees of the massage parlor, nor did the victim's own husband. In addition, the victim never expressed any concern over her safety or security at the massage parlor.

Since there is no evidence in the record of any previous incidents of violence or threats against the victim which would have placed the Defendant on notice of the likelihood of the victim's murder, Plaintiffs have failed to establish the victim's murder was foreseeable. *See Napper v. Kenwood Drive–In Theatre,* 310 S.W.2d 270, 272 (1958) and *Grisham v. Wal–Mart Stores, Inc.,* 929 F.Supp. 1054 (E.D.Ky.1995) (holding that Wal–Mart was not under a duty to protect a patron from a criminal assault absent prior similar incidents at their facility or in the general area). As such, Defendant Seawright is entitled to an entry of summary judgment.

It is therefore **ORDERED** that Defendant Seawright's Motion for Summary Judgment [Dkt. # 25] is hereby **Granted** and Plaintiffs claims against her are dismissed.