*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0077P (6th Cir.)
File Name: 00a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

MICHAEL J. STALBOSKY,
  *Plaintiff-Appellant,*

  *v.*

WILLIAM CHRISTOPHER
BELEW and THREE RIVERS
TRUCKING COMPANY,
  *Defendants-Appellees.*



No. 98-6734

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 96-00038—Joseph M. Hood, District Judge.

Argued: December 7, 1999

Decided and Filed: March 3, 2000

Before: COLE and GILMAN, Circuit Judges; CARR,
District Judge.

———————

*The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

1

---

**COUNSEL**

---

**ARGUED:** Steven G. Bolton, BOLTON LAW OFFICES, Frankfort, Kentucky, for Appellant.   John B. Drummy, KIGHTLINGER & GRAY, Indianapolis, Indiana, for Appellees. **ON BRIEF:** Steven G. Bolton, BOLTON LAW OFFICES, Frankfort, Kentucky, for Appellant.   John B. Drummy,  KIGHTLINGER & GRAY, Indianapolis, Indiana, Van T. Willis, KIGHTLINGER & GRAY, New Albany, Indiana, for Appellees.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  On April 27, 1995, William Belew was driving a truck through Kentucky on behalf of Three Rivers Trucking Co.  Belew picked up a stranded motorist, Myra Stalbosky, at an interstate rest area. He later raped and murdered her in the cab of his truck. Michael Stalbosky, the administrator of Myra Stalbosky's estate, brought suit against both Belew and Three Rivers.  He alleged that Three Rivers should be held liable for negligently hiring and retaining Belew because the company knew or should have known that Belew posed an unreasonable risk to members of the general public such as Myra Stalbosky.  The district court granted summary judgment against Belew and awarded a two and a half million dollar judgment to Stalbosky.  As to Three Rivers, however, the district court granted the company's motion for summary judgment, holding that Stalbosky had not raised a genuine issue of material fact under Kentucky law that would allow recovery in his favor.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.  Factual background

#### 1.  *Belew's criminal history*

On February 8, 1991, Belew was convicted of arson in Weakley County, Tennessee and sentenced to three years in prison.  After serving 90 days, he was released on probation for the remainder of his term.  On September 9, 1991, Patricia Buchanan, a former girlfriend of Belew's, swore out a complaint against him, alleging that he struck her, tied her feet, and pulled her out of her house by the hair while her eight year old son watched.  Buchanan's complaint was subsequently dismissed.

Over three and a half years later, Belew was arrested on a charge of aggravated assault.  According to the complaint, Belew entered the home of Maureen Revel, another former girlfriend, in the early morning hours on March 21, 1995.  Belew allegedly tried to force Revel out of her residence, and placed a gun to her head when she refused.  The complaint states that Belew then attempted to rape Revel, although she was ultimately able to dissuade him.  Upon being arrested, Belew managed to escape, but was recaptured shortly thereafter and charged with aggravated assault and escape.  On April 26, 1995, he pled guilty and was sentenced to 11 months and 29 days of incarceration.  The majority of the sentence was suspended, except for 15 days, which were to be served beginning on August 4, 1995.

On April 27, 1995, the day after his sentencing, Belew took a driving assignment for Three Rivers, which scheduled him to make a round trip from Paris, Tennessee to East Sparta, Ohio and back.  Belew pulled over at a rest area on Interstate 71, in Henry County, Kentucky, where he encountered Myra Stalbosky, an eighteen-year-old motorist who was having car troubles.  Myra Stalbosky then rode with Belew to a truck stop, where Belew raped and strangled her in his cab.  After his arrest, Belew pled guilty to rape and murder, and is currently serving a life sentence for those crimes.

### 2.   *Belew's employment history with Three Rivers*

Three Rivers first hired Belew in 1991 for part-time work, washing trucks and working in its shop. On February 9, 1994, Belew was hired as a full-time truck driver. Prior to hiring Belew as a driver, Three Rivers checked with his previous employer, obtained a copy of his driving record, and performed a drug screen. According to Three Rivers, none of these inquiries indicated that Belew was unfit for a position as a truck driver. On his application form, Belew denied that he had ever been convicted of a felony, despite his prior conviction for arson in 1991. Three Rivers has no record of any complaints against Belew in his capacity as one of its employees.

Belew was off work between March 12 and April 2, 1995, during which time he assaulted Revel, was arrested, and was held in jail for four days. The officers of Three Rivers deny any knowledge of this incident prior to Belew's April 27, 1995 road trip. A former Three Rivers employee, however, claims that it was "common knowledge" at the company that Belew's girlfriend had had him arrested and put in jail.

### B.   Procedural background

On April 26, 1996, Michael Stalbosky, administrator of Myra Stalbosky's estate, filed suit against Belew and Three Rivers for the wrongful death of Myra Stalbosky, with jurisdiction based on diversity of citizenship. Stalbosky asserted two claims against Three Rivers—respondeat superior and negligent hiring and retention. Three Rivers moved for summary judgment on both claims. On December 20, 1996, the district court dismissed Stalbosky's respondeat superior claim, finding that Belew's actions were not taken in furtherance of his employment. The district court declined to dismiss the negligent hiring and retention claim, however, and ordered the parties to proceed with discovery.

On February 19, 1998, after Stalbosky had received several extensions to conclude his discovery, Three Rivers requested a ruling on its summary judgment motion regarding

### III.   CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment in favor of Three Rivers.

Belew was not provided, by virtue of his employment, with a unique opportunity to commit a crime against [Myra Stalbosky]. Indeed, he was in no better position than any other member of the general public. [Myra Stalbosky] was not an invitee or customer of Three Rivers, rather, Belew happened upon her as a member of the general public.

A federal district court applying Utah law in similar circumstances granted summary judgment to a trucking company on the ground (among others) that there was no showing that the trucking company knew or should have known that its drivers commonly picked up hitchhikers or otherwise closely interacted with members of the general public. *See C.C. v. Roadrunner Trucking, Inc.*, 823 F. Supp. 913, 923 (D. Utah 1993).

In sum, the competent proof presented by Stalbosky would at best allow a factfinder to conclude that Three Rivers knew or should have known of Belew's 1991 offenses and his even earlier commitment to a behavioral health hospital. Unlike the factual scenario in *Malorney*, however, these facts are insufficient to support a conclusion that Three Rivers should have reasonably foreseen that Belew might assault a total stranger while on the road several years later.

Stalbosky also failed to present evidence that would allow a reasonable factfinder to conclude that Three Rivers's retention of Belew as a long-haul truck driver placed him in a special position to inflict harm on others. This stands in contrast to the case of *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438 (Ky. 1998), in which the employee responsible for the assault was granted special access to another employee by the nature of his position. We find nothing in the *Oakley* decision to indicate that the courts of Kentucky would impose liability on Three Rivers for Belew's despicable crime under the circumstances before us.

Stalbosky's negligent hiring and retention claim. The district court granted Three Rivers's motion on April 27, 1998, finding no evidence indicating that the officers of Three Rivers should have foreseen Belew's violent behavior. Stalbosky filed a timely notice of appeal on December 4, 1998, limiting the issue to the grant of summary judgment on his negligent hiring and retention claim.

## II. ANALYSIS

### A.  Standard of review

We review de novo the district court's grant of summary judgment. *See, e.g.*, *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B.  Applicable law

As a preliminary matter, Stalbosky argues that the district court wrongly applied another state's law of negligent hiring and retention rather than Kentucky's. In a previous memorandum order and opinion dated December 20, 1996, the district court had indeed looked to jurisdictions outside of Kentucky for guidance, finding no Kentucky decision on point. Kentucky only recognized a cause of action for negligent hiring and retention on March 13, 1998. *See Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438 (Ky. 1998). In the memorandum opinion and order from which this appeal is

taken, however, the district court noted the decision in *Oakley* and properly applied its holding.

Because jurisdiction in this case is based on diversity of citizenship, both the district court and this court are required to apply the law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). We are in effect sitting as a state appellate court in Kentucky, with the obligation to decide the case as we believe the Kentucky Supreme Court would do. *See Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir. 1988) ("[O]ur task [in a diversity case] is to make our best prediction, even in the absence of direct state court precedent, of what the Kentucky Supreme Court would do if it were confronted with this question.").

### C. Negligent hiring and retention—whether Three Rivers knew or should have known that Belew was unfit for his position

Under Kentucky law, the two elements of a suit for negligent hiring and retention are that (1) the employer knew or reasonably should have known that the employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff. *See Oakley*, 964 S.W.2d at 442. The district court granted summary judgment in favor of Three Rivers on the grounds that Stalbosky failed to raise a genuine issue of material fact as to the first element, i.e., whether Three Rivers knew or reasonably should have known that Belew was unfit for his job as a truck driver.

In its analysis, the district court considered whether Sonny and Randy Crutcher, the owners and managers of Three Rivers, had any knowledge of Belew's prior crimes or violent acts before the murder of Myra Stalbosky. It first noted that Belew had lied on his application, denying any prior felony convictions. Turning then to Stalbosky's evidence, the court found that his supporting affidavits on the key issue of the Crutchers' knowledge constituted inadmissible hearsay. The district court concluded that "the plaintiff has not come forth

### D. Negligent hiring and retention—whether Belew's employment with Three Rivers posed an unreasonable risk of harm to others

In the alternative, even if Stalbosky had satisfied the first element of the *Oakley* test, he would not have established the second element—that Belew's position as a long-haul truck driver posed an unreasonable risk of harm to members of the general public such as Myra Stalbosky. We may look to this alternative ground despite the fact that the district court did not do so. *See City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 251 (6th Cir. 1994) (finding that this court may affirm on any grounds supported by the record, even though they may be different than those relied upon by the district court).

In *Oakley*, the key Kentucky case on point, the court denied the employer's motion for summary judgment in part because the employer placed a female employee inside a store at night with another employee whom the employer knew had an extensive criminal history, including an arrest for attempted rape. *See Oakley*, 964 S.W.2d at 442. In support of its decision, the *Oakley* court cited to numerous negligent hiring and retention opinions from other jurisdictions, in all of which the dangerous employee was placed in a supervisory position over others or given special access to their locations. *See, e.g., Ponticis v. K.M.S. Inv.*, 331 N.W.2d 907 (Minn. 1983) (tenant raped by manager of apartment complex who had been entrusted with pass key); *J. v. Victory Tabernacle Baptist Church*, 372 S.E.2d 391 (Va. 1988) (ten-year-old raped by church employee who was entrusted with keys to church doors and assigned duties that involved contact with children); *Copithorne v. Framingham Union Hosp.*, 520 N.E.2d 139 (Mass. 1988) (hospital patient raped by doctor).

In contrast, Belew's position as a long-haul truck driver did not grant him supervisory power over or special access to others, particularly because Three Rivers had an explicit policy prohibiting its drivers from picking up hitchhikers. As Three Rivers observes:

marks omitted)). Thus, the district court's exclusion of Boggs's affidavit was erroneous.

This error by the district court, however, is not cause for reversal. Viewed in the light most favorable to Stalbosky, the import of Boggs's affidavit is that when Three Rivers hired Belew as a full-time driver in 1994 the company may have known that (1) Belew had been convicted of arson in February of 1991, (2) an assault charge had been filed against him by a former girlfriend in September of 1991 and subsequently dropped, and (3) "at a younger age" Belew had been placed in a behavioral health hospital because of a drug addiction and a hot temper. There is no competent evidence indicating that Three Rivers learned of Belew's March 21, 1995 arrest for assault—which occurred while Belew was on leave—prior to its dispatching Belew on the tragic April 27, 1995 road trip. Even if Three Rivers was aware of the three incidents listed above, we agree with the district court that no reasonable juror could conclude from that information that Three Rivers knew or should have known that Belew was unfit for his job as a long-haul truck driver.

We find the facts in the present case to be distinguishable from the unusual facts presented in *Malorney v. B & L Motor Freight, Inc.*, 496 N.E.2d 1086 (Ill. App. Ct. 1986). In *Malorney*, a trucking company hired a driver with a history of violent sex-related crimes, including an arrest only a year before he was hired for aggravated sodomy of two teenage hitchhikers. Based on these facts, the Illinois appellate court denied the trucking company's motion for summary judgment in a suit brought by a hitchhiker who was sexually assaulted by the driver, holding that material issues of fact existed as to whether the company was negligent in entrusting a truck with a sleeping compartment to the driver. In the present case, there is no comparable evidence demonstrating that Three Rivers should have reasonably foreseen that Belew was likely to assault a total stranger while driving for the company.

with any affirmative evidence that Three Rivers did in fact know, or should have known, of Belew's unfitness."

Stalbosky argues on appeal that the district court wrongly excluded as hearsay three affidavits that he tendered in support of his claim. "While this court typically reviews evidentiary rulings under an abuse of discretion standard, this court reviews de novo a district court's conclusion whether proffered evidence is inadmissible hearsay." *United States v. Latouf*, 132 F.3d 320, 329 (6th Cir. 1997) (citation and internal quotation marks omitted).

### 1. *Blakeley's affidavit*

Philip Blakeley, a private investigator hired by the Stalbosky family to investigate the circumstances surrounding Myra Stalbosky's death, submitted an affidavit recounting an interview with Belew that took place on April 10, 1997. In that affidavit, Blakeley related Belew's statement that Randy and Sonny Crutcher were both aware of his criminal history, but told him not to worry about it and not to list it on his application.

The district court disregarded this testimony as hearsay. On appeal, Stalbosky argues that Blakeley's statement was admissible under Rule 801(d)(2) of the Federal Rules of Evidence as an admission by Belew, a party-opponent. Belew is a party to this action, but the statements that are at issue here were not offered against Belew, but rather against Three Rivers to establish its knowledge of Belew's prior criminal history. Under Rule 801(d)(2)(A), a party's statement is admissible as non-hearsay only if it is offered against that party. The district court therefore properly refused to consider Blakeley's affidavit.

### 2.    *Norsworthy's affidavit*

James Norsworthy, a former driver for Three Rivers, stated in an affidavit dated March 2, 1998 that "[i]t was common knowledge at the company that Chris' girlfriend had him arrested and put in jail." The district court disregarded this part of Norsworthy's testimony on the grounds that it was inadmissible hearsay. In the alternative, the trial court held that Norsworthy's statement "does not definitively show that Sonny and Randy Crutcher . . . knew that Belew had been arrested or that he had a violent disposition." *Id.*

Norsworthy's statement is ambiguous. It is unclear whether his statement is founded on a *belief* that others in the company knew of Belew's arrest, which would be inadmissible, or his personal recollections of others actually speaking about the arrest, which might be admissible. Regardless of whether Norsworthy's statement is admissible, however, it is too conclusory and vague to successfully counter a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (holding that, to withstand a motion for summary judgment, a plaintiff must adduce some concrete evidence on which a reasonable juror could return a verdict in his favor). Moreover, as the district court aptly noted, even if it is assumed that Belew's arrest was "common knowledge" at Three Rivers, that does not necessarily indicate that the owners of Three Rivers were aware of this fact.

### 3.    *Boggs's affidavit*

Glenn Boggs, a detective with the Kentucky State Police, was the lead investigator in the homicide of Myra Stalbosky. As part of his investigation, he interviewed Sonny Crutcher in July of 1995. Boggs stated in a November 15, 1996 affidavit that Crutcher told him the following:

I am ashamed at what has happened. This is what happens when you try to give someone a chance. Chris's dad told me that Chris had served some time in prison and had been in quite a bit of trouble over fighting with his former girlfriends. Chris's dad said Chris was trying

to straighten up and do what was right, so I gave him a chance.

In Boggs's affidavit, he also quotes Crutcher as saying that Belew's father, Mike Belew, had told him that at a younger age, Chris Belew had been placed in a behavioral health hospital because of a drug addiction and a hot temper that resulted in him attacking other people.

The district court excluded this affidavit as well, ruling without elaboration that it constituted inadmissible hearsay. Stalbosky argues on appeal that Boggs's affidavit is not hearsay because it relates statements made by Sonny Crutcher that are admissions of a party-opponent under Rule 801(d)(2)(D) of the Federal Rules of Evidence. That rule allows for the admission of statements by a party's agent, concerning a matter within the scope of his agency or employment, made during the existence of the relationship.

Three Rivers responds by contending that Sonny Crutcher retired from Three Rivers in February of 1995, and was therefore was not speaking as an agent of the company at the time of the interview in July of 1995. The evidence on the record does not support Three Rivers's contention. Sonny Crutcher remains the chairman of the board of Three Rivers and he described himself in September of 1997 as being only "semi-retired." Boggs's recollection of Crutcher's comments is therefore non-hearsay and is admissible as the admission of a party-opponent.

Furthermore, Boggs's statements are also not hearsay because they were not offered to prove the truth of the matter asserted—that Belew had served time in prison or fought with former girlfriends—but solely to prove that Sonny Crutcher was aware of Belew's history. *See United States v. Branham*, 97 F.3d 835, 851 (6th Cir.1996) ("[I]f the significance of a statement lies solely in the fact that it was made, rather than in the veracity of the out-of-court declarant's assertion, the statement is not hearsay because it is not offered to prove the truth of the matter asserted." (citation and internal quotation