Laura MURPHY, Appellant,

v.

**SECOND STREET CORPORATION**
and Coyotes, Inc., Appellees.

No. 1999–CA–003041–MR.

Court of Appeals of Kentucky.

March 23, 2001.

Brian K. Darling, Louisville, KY, for Appellant.

Kenneth A. Bohnert, Edward F. Busch, Louisville, KY, for Appellee.

Before HUDDLESTON, JOHNSON and SCHRODER, Judges.

OPINION

JOHNSON, Judge.

Laura Murphy has appealed from a summary judgment entered by the Jefferson Circuit Court on November 15, 1999, that dismissed her personal injury action for damages suffered from an assault which allegedly occurred at the Second Street Corporation's place of business.[1] Having concluded that the Corporation did not have a duty to prevent the initial assault of Murphy or a duty to identify or to detain the assailant after the assault, we affirm.

On May 21, 1997, Murphy and two companions, Rebecca Gnadinger and Shannon Simms, decided to "get out" and go dancing. That evening at approximately 10:45 p.m., the three friends arrived at O'Malley's Corner, which is an entertainment complex consisting of a several nightclubs which are separated from each other but also connected to each other by walkways and doorways. That night, Murphy, who was 19 years old at the time, and her friends spent their time in the Rock It Club, which was conducting a "teen night." During "teen night", no alcoholic beverages were sold in the Rock It Club but customers over 21 years of age were permitted in the premises.[2]

Murphy testified in her deposition that she and her friends were dancing near the disk jockey booth when an altercation occurred. She testified that while she was dancing, she was pushed from behind. Murphy then turned around to find out why she had been pushed and a large woman told her that she had stepped on her toe.[3] In her deposition Murphy stated: "I was in the middle of telling her I was sorry, you know, it was a crowded dance floor, and she hit me in my jaw."

Immediately thereafter, the club's private security personnel removed Murphy's attacker from the club and off the premises without gathering any identification from her. The club also attended to Murphy by having an emergency medical technician (EMT) examine her. The EMT told Murphy that she was alright and her friends drove her home. Murphy testified, however, that during the night she suffered pain and the next day she went to Jewish Hospital where she underwent surgery for a broken jaw. As a result, Murphy had a tooth removed and her mouth was wired shut for six weeks.

On May 20, 1999, Murphy filed a complaint in the Jefferson Circuit Court against the Second Street Corporation as the owner and operator of O'Malley's Corner and Coyote's, Inc.[4] In her complaint, Murphy alleged:

1. Second Street Corporation is the owner of several nightclubs that are part of a building complex located at Second Street and Liberty Street in downtown Louisville, Kentucky, and known as O'Malley's Corner.

2. It should be noted, however, that in other clubs at O'Malley's Corner alcohol was served to persons over the age of 21.

3. Murphy was unable to physically describe her attacker, but according to her friends she was attacked by a large, black woman.

4. The complaint and record are somewhat confusing, but Second Street Corporation owned O'Malley's Corner which consisted of several bars located together. Murphy was injured in the Rock It Club which was not named separately as a defendant. Coyote's,

On May 21, 1997, at approximately 11:45 p.m., Plaintiff was in Defendant's tavern and dance hall as a patron. While Plaintiff was at the tavern, a certain stranger whose name is unknown to the Plaintiff was also at the tavern as a patron and was served intoxicating beverages by Defendant. After remaining in Defendant's tavern for some time said stranger started to become unruly, boisterous, and prone to violent action, all of which conduct Defendant knew, or in the exercise of reasonable care should have known, about. After a while, said stranger started a fight and engaged in other violent action with Plaintiff as a result of same, Plaintiff was suddenly and *without warning* forcefully and violently assaulted and beaten by said stranger as a consequence of which Plaintiff sustained the severe bodily injuries described below [emphasis added].

On June 10, 1998, the Corporation and Coyote's filed an answer. The parties then conducted discovery which included taking the depositions of Murphy, her friends Gnadinger and Simms, and the surgeon that treated Murphy. On April 12, 1999, the appellees filed a motion for summary judgment.[5] On May 6, 1999, Murphy filed a response and the trial court heard oral arguments on the motion on May 24, 1999. On November 1, 1999, at the trial court's request, the parties filed supplemental briefs on the issue of whether the appellees' internal use of a written security policy had created a duty to Murphy to detain the assailant and to gather from her information for the purpose of identification. On November 15, 1999, the trial court entered an opinion and order granting appellees' motion for summary judgment and dismissing Murphy's complaint. This appeal followed.

The standard of review on appeal of a summary judgment is whether the trial court correctly found that there was no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law.[6] Since factual findings are not at issue, there is no requirement that the appellate court defer to the trial court.[7] "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor."[8] "The inquiry should be whether, from the evidence of record, facts exist which would make it possible for the nonmoving party to prevail. In the analysis, the focus should be on what is of record rather than what might be presented at trial."[9]

For Murphy to meet her burden of proof in this negligence action she must establish: (1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury.[10] The question of duty presents an issue of law;[11] and when

which was another bar connected to the Rock It Club, was named as a defendant but apparently none of the events on this evening took place in Coyote's.

5. Kentucky Rules of Civil Procedure (CR) 56.

6. CR 56.03.

7. *Goldsmith v. Allied Building Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992).

8. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476, 480 (1991).

9. *Welch v. American Publishing Co. of Kentucky*, Ky., 3 S.W.3d 724, 730 (1999).

10. *Mullins v. Commonwealth Life Insurance. Co.*, Ky., 839 S.W.2d 245, 247 (1992) (citing *Illinois Central R.R. v. Vincent*, Ky., 412 S.W.2d 874, 876 (1967)).

11. 57A Am.Jur.2d *Negligence* § 20 (1989); *Prosser and Keeton on Torts*, § 37 (5th ed.1984).

a court resolves a question of duty, it is essentially making a policy determination.[12]

"What constitutes ordinary care varies with the nature of the business and the use to which the premises are put, but it is a care commensurate with the particular circumstances involved in the given case."[13] A proprietor is not the insurer of the safety of its guests. A plaintiff must show either: (1) that the proprietor had knowledge that one of his patrons was about to injure the plaintiff and he failed to exercise ordinary care to prevent such injury; or, (2) that the conduct of some of the persons present was such as would lead a reasonably prudent person to believe that they might injure other guests.[14] We hold that the trial court was correct in ruling as a matter of law that Murphy failed to show that the Corporation failed to exercise ordinary care in preventing her from being injured.

In her brief, Murphy states: "Appellees knew or should have known of the assailant's propensity to be violent." However, Murphy fails to identify any evidence of record to support this statement. In Murphy's own complaint, she states: "Plaintiff was suddenly and without warning forcefully and violently assaulted and beaten by said stranger." Obviously, if Murphy was struck without warning, the Corporation had no duty to prevent the assault; the assault was not foreseeable. Murphy's deposition testimony also supports the legal conclusion that the Corporation did not breach a duty to her. She states:

I was pushed, but at that point I didn't really know if I—it was really crowded, so I really didn't know if she just did it

on accident or what, but, you know, after she hit me I knew that she didn't do that on accident. So I guess you would say when she hit me is when I knew she had violent tendencies.

In another portion of her deposition, Murphy states that she was in the middle of telling her assailant that she was sorry for stepping on her toe when she was struck in the jaw.

In Gnadinger's deposition, she states that she was a foot away from Murphy when Murphy was punched; but she could not hear the actual words exchanged between Murphy and the assailant because "it was loud in there and too many people [were] around." Both Murphy and Gnadinger testified that during this exchange there was a member of Rock It Club's private security staff standing five feet away. Thus, according to Murphy and her own witness, the assault occurred in a crowded and loud bar and without warning. Accordingly, we affirm the trial court's ruling that the Corporation did not have a duty to protect Murphy from this unforseeable assault.

Murphy also argues that the trial court erred in dismissing her claim that the Corporation breached its duty to her by failing to detain her assailant and to gather information that could be used to identify her. In her brief, Murphy states:

Appellees failed to detain the assailant of the Appellant once the Appellees and the agents took custody of the assailant. This is not disputed, Appellees employed its said quasi-police force at the time, by stationing two, two hundred fifty (250)

---

12. *Mullins, supra* at 248; see *also Nelson v. Davidson,* 155 Wis.2d 674, 456 N.W.2d 343, 345 (1990).

13. *Sidebottom v. Aubrey,* 267 Ky. 45, 101 S.W.2d 212, 213 (1937).

14. *Id.*

pound bouncers at said disc-jockey stand.[15]

In their briefs, the parties spend a great deal of time discussing the law of assumption of a duty and the "Good Samaritan" doctrine.[16] However, we do not believe that these doctrines are applicable. While the Corporation did owe a duty to Murphy to protect her once the threat of injury was foreseeable, by fulfilling that duty it did not assume an additional duty to gather information concerning her assailant. The duty owed to Murphy by the Corporation was to protect her and to prevent her further harm from the unknown assailant once the threat of injury became foreseeable, but it did not have a duty to assist Murphy in obtaining information about her assailant so she could pursue a criminal or civil claim.

Murphy readily concedes that she is unable to cite any case law that would support her contention that a club has a duty to detain an assailant and to gather identifying information. In its brief, the Corporation states:

> It is not the law that defendants may decline to assist customers who are being attacked by another customer in order to avoid assuming a duty to detain and thereby minimize their liability. Since tavern owners have a *duty* to assist customers who are being attacked

by another customer, plaintiff's "assumed duty" claim is just another way of saying that plaintiff believes that an owner's common law duty of assistance should include a mandatory duty to detain [emphasis original].

It should be remembered that Murphy does not contend that the Corporation failed to fulfill its duty to protect her from further injury once she was struck. The record is undisputed that the security personnel stepped in immediately after the punch was thrown and escorted the assailant off of the premises and attended to Murphy's injuries. We hold that the Corporation fulfilled its duty to protect Murphy from foreseeable physical injury. In fulfilling its duty to protect Murphy from further attack, it did not assume a duty to help her pursue a claim for damages against her assailant.

Having concluded that the trial court's ruling is correct as a matter of law, the summary judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

---

**15.** The testimony in the depositions is that there was at least one bouncer near the disc jockey stand, but there has not been any evidence in the record as to the bouncer's weight.

**16.** *Restatement (Second) of Torts* §§ 323, 324A (1965). In connection with this, Murphy also

argues that the Corporation's own procedures and guidelines call for its security team to fill out an incident report. The fact that the Corporation failed to fill out an internal incident report did not create a new duty or constitute an assumption of a duty that it otherwise did not have.