**Nathan A. WILKERSON and Keisha M. Wilkerson, Appellants,**

v.

**Aaron Z. WILLIAMS and Jeffrey L. Williams, Appellees.**

No. 2010–CA–000088–MR.

Court of Appeals of Kentucky.

Feb. 18, 2011.

Case Ordered Published by Court of Appeals April 8, 2011.

John M. Longmeyer, Louisville, KY, for appellants.

Bradley E. Moore, J. Matthew Tatman, Lexington, KY, for appellees.

Before TAYLOR, Chief Judge; DIXON, Judge; ISAAC,[1] Senior Judge.

## OPINION

ISAAC, Senior Judge:

Nathan A. Wilkerson and Keisha M. Wilkerson appeal from a Bullitt Circuit Court order entered on November 24, 2009, which denied their motion for a new trial.

Nathan claims that he was punched in the face by Aaron Z. Williams at a party hosted by Aaron's father, Jeffrey L. Williams. Alcoholic drinks were served at the party. According to the Wilkersons, Aaron, who was thirty-one years of age at the time, was visibly intoxicated at the party and admitted to them that he was consuming moonshine. The Wilkersons filed suit on June 21, 2007, alleging that Aaron had committed assault and negligent assault against Nathan and that Jeffrey was also liable to Nathan for negligently serving alcohol to Aaron. Keisha asserted a claim for loss of consortium.

Jeffrey filed a motion for summary judgment arguing that there had been no negligence on his part and that he should be dismissed as a party as a matter of law. The trial court granted the motion as a

---

1. Senior Judge Sheila R. Isaac sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

directed verdict in Jeffrey's favor at the close of the Wilkersons' proof at trial. The trial court also granted the Williamses' motion in limine to exclude the Wilkersons' testimony that Aaron had admitted to drinking moonshine. The jury found that Nathan had not been struck by Aaron and the trial court entered a judgment on October 20, 2009, dismissing the Wilkersons' claims with prejudice. The Wilkersons' subsequent motion for a new trial was denied and this appeal followed.

The Wilkersons raise the following issues on appeal: (1) that the trial court erred in granting the motion in limine to exclude the testimony about Aaron drinking moonshine; (2) that the jury failed to follow the instructions; and (3) that Kentucky should make social hosts liable to third parties who are injured by the negligent acts of intoxicated guests.

■■■ First, however, we will address the appellees' contention that this appeal should be dismissed because the Wilkersons appealed from an interlocutory order. The notice of appeal states that it is taken from the order denying the Wilkersons' Kentucky Rules of Civil Procedure (CR) 59 motion for a new trial, rather than from the final judgment. The appellees argue that such an order is non-final and therefore non-appealable, because it converts a final judgment into an interlocutory judgment. Under the policy of substantial compliance instituted by the revision of CR 73.02 in 1985, the failure to properly designate the final judgment from which an appeal is taken does not result in automatic dismissal. *City of Devondale v. Stallings,* 795 S.W.2d 954, 956–57 (Ky.1990). In this case, the notice of appeal was timely filed and all the proper parties were named. "[N]onjurisdictional defects in the notice of appeal should not result in automatic dismissal; rather, the Court should consider any harm or prejudice resulting

from the defect in deciding the appropriate sanction." *Id.* The appellees have not shown any harm resulting from the Wilkersons' error in designating the order from which this appeal is taken and we therefore hold that dismissal of the appeal or any form of sanctions is inappropriate.

■■■ The Wilkersons' first argument concerns the trial court's exclusion of the so-called moonshine testimony. Nathan Wilkerson testified in a deposition that, at the party, Aaron was consuming a substance from a bottle which he admitted was "moonshine." The Williamses filed a motion in limine to exclude the testimony at trial on the grounds that it was hearsay, irrelevant and would serve only to create prejudice against Aaron Williams. The trial court granted the motion on the grounds that the prejudicial effect of the word "moonshine" would outweigh any probative value, and noted that the court had allowed the introduction of evidence that alcohol was served and consumed at the party. The Wilkersons argue that the moonshine testimony was admissible under Kentucky Rules of Evidence (KRE) 801A(b) which permits the introduction of hearsay if the statement is offered against a party and is that party's own statement.

KRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury[.]" "It is within the discretion of the trial court to determine whether the probative value of proffered evidence is substantially outweighed by undue prejudice." *Kroger Co. v. Willgruber,* 920 S.W.2d 61, 67 (Ky.1996). The Wilkersons argue that the consumption of moonshine is an illegal activity and that therefore Jeffrey Williams was negligent per se for allowing it to occur on his property. There is no legal authority for this contention. The precise type of alco-

hol Aaron was consuming was not relevant to the jury's task of determining whether he struck Nathan or not. The evidence would have served only to prejudice the jury against Aaron and Jeffrey. The trial court's ruling that the moonshine testimony was more prejudicial than probative was fully in accord with KRE 403 and will not be disturbed on appeal.

The Wilkersons next argue that the trial court erred in not granting a new trial on the basis of the jury's failure to follow the instructions properly. The first section of the jury instructions defined common-law negligence. The second section required the jury to find whether Nathan Wilkerson was actually struck by Aaron Williams' fist. If the answer was no, the jury was instructed to notify the bailiff that they had finished their deliberations. If the answer was yes, the jury was directed to proceed to the third section, which asked the jury to determine the amounts of recovery, including necessary and reasonable expenses for medical services incurred by Nathan, not to exceed $15,249.75; mental and physical pain and suffering not to exceed $455,000; and lost wages not to exceed $5760.

During the course of their deliberations, the jury members sent a written question to the court asking how much of the $15,249.75 claimed as medical expenses was covered by insurance. The trial court advised the jury that it must award Nathan the full amount if it believed from the evidence that he had incurred these expenses, without regard for whether or not insurance had paid for any portion. Ultimately, the jury unanimously found that Nathan was not struck by Aaron.

■ The Wilkersons contend that the jury would not have submitted the question regarding the insurance payments if it had not already found that Aaron had struck Nathan. They argue that the jury must have improperly altered its verdict on liability because it did not want to award him the full amount of medical expenses. They argue that the verdict was a "quotient verdict" and consequently void.

■ "The standard of review for the denial of a motion for a new trial is limited to whether the decision of the trial court was clearly erroneous." *See Miller v. Swift,* 42 S.W.3d 599, 601 (Ky.2001) (citing *Cooper v. Fultz,* 812 S.W.2d 497 (Ky. 1991)). In denying the motion for a new trial, the trial court aptly stated that it was not in a position to make assumptions regarding the jury's deliberations as those matters are not in the record. The Wilkersons' interpretation of what occurred is purely speculative; furthermore, we are unaware of any prohibition against a jury altering its verdict during the course of its deliberations. The concept of a quotient verdict is not applicable to these factual circumstances. A quotient verdict occurs when a jury agrees in advance to arrive at a verdict by averaging the individual amounts arrived at by each juror. Such a verdict is void. *Murphy v. Cordle,* 303 Ky. 229, 233, 197 S.W.2d 242, 244 (1946). There is no indication whatsoever in this case that the jury agreed to be bound by a quotient verdict. The trial court did not err in refusing to grant a new trial.

■ Thirdly and finally, the Wilkersons argue that the trial court erred in dismissing Jeffrey as a defendant. They contend, in reliance on *Estate of Vosnick v. RRJC, Inc.,* 225 F.Supp.2d 737 (E.D.Ky.2002), that Kentucky law is silent on the subject of the liability of social hosts for third parties who are injured by intoxicated guests. They urge that we adopt the position of the New Jersey Supreme Court, which held that a social host who enables an adult guest at his home to become drunk is liable to the victim of an automo-

bile accident caused by the drunken driving of the guest. *See Kelly v. Gwinnell*, 96 N.J. 538, 476 A.2d 1219 (1984).

Since the publication of *Vosnick*, the Kentucky Supreme Court rendered its opinion in *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840 (Ky. 2005), which addressed whether a national fraternal organization had a duty to exercise reasonable care to control one of its local chapters so as to prevent the death of a minor who was killed in a car accident after consuming alcohol served on the premises of the local chapter. Although the *Carneyhan* court did not rule directly on the issue of social host liability, its analysis is directly pertinent to the existence of a duty on Jeffrey's part.

The Court began by citing the general rule that "an actor whose own conduct has not created a risk of harm has no duty to control the conduct of a third person to prevent him from causing harm to another." *Carneyhan*, 169 S.W.3d at 849. It then acknowledged that there was an exception to the rule and that a duty could arise to exercise reasonable care to prevent harm by controlling a third person's conduct where "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." *Id.* (citations omitted.) The Court observed that in order for liability to attach, "the defendant's ability to control the person who caused the harm must be real and not fictional and, if exercised, would meaningfully reduce the risk of the harm that actually occurred." *Id.* at 851. The Court then surveyed cases where courts have found that such a special relationship exists, including a Supreme Court of Texas opinion which addressed a social host's liability for harm caused by an intoxicated guest. *See Graff v. Beard*, 858 S.W.2d 918 (Tex.1993).

The [Texas] court held that the social hosts had no duty to prevent their guest from consuming alcohol or later driving, in part because the hosts had no means of effective control over the guest: "we cannot assume that guests will respond to a host's attempts, verbal or physical, to prevent the guests from driving."

*Carneyhan*, 169 S.W.3d at 853, *citing Graff*, 858 S.W.2d at 921–22. Similarly, in this case, Jeffrey had no effective means of control over Aaron, an adult guest, to prevent him from driving, much less from assaulting another guest.

■ Furthermore, "[t]he foreseeability of the injury defines the scope and character of a defendant's duty." *Norris v. Corrections Corp. of America*, 521 F.Supp.2d 586, 588 (W.D.Ky.2007). "The most important factor in determining whether a duty exists is foreseeability." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003) (citation omitted). "[C]ourts have held that, except under extraordinary circumstances, individuals are generally entitled to assume that third parties will not commit intentional criminal acts." *James v. Meow Media, Inc.*, 300 F.3d 683, 693 (6th Cir.2002).

The system of criminal liability has concentrated responsibility for an intentional criminal act in the primary actor, his accomplices, and his co-conspirators. By imposing liability on those who did not endeavor to accomplish the intentional criminal undertaking, tort liability would diminish the responsibility placed on the criminal defendant. The normative message of tort law in these situations would be that the defendant is not entirely responsible for his intentional criminal act.

*Id.* at 694.

Even though physical assaults would appear to be more foreseeable in bars than in

parties at private homes, Kentucky courts have refused to impose liability on bar owners for such assaults. *See Murphy v. Second Street Corp.*, 48 S.W.3d 571 (Ky. App.2001); *Isaacs v. Smith*, 5 S.W.3d 500 (Ky.1999). "Whether the defendant owed a duty is a question of law for the court to decide." *Lee v. Farmer's Rural Elec. Co-op. Corp.*, 245 S.W.3d 209, 212 (Ky.App. 2007). In light of the foregoing case law, the trial court did not err as a matter of law in dismissing Jeffrey as a defendant.

The judgment of the Bullitt Circuit Court is affirmed.

ALL CONCUR.