RENDERED: MARCH 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1424-MR

ALAN ELSTUN                                                          APPELLANT

v.
APPEAL FROM KENTON CIRCUIT COURT
HONORABLE GREGORY M. BARTLETT, JUDGE
ACTION NO. 20-CI-00886

SADDLE CLUB, LLC                                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND COMBS, JUDGES.

COMBS, JUDGE: We placed this case in abeyance pending the outcome of a highly relevant case pending before the Supreme Court of Kentucky: *Wal-Mart, Inc. v. Reeves*, ___ S.W.3d ___, 2023 WL 2033691 (Ky. Feb. 16, 2023). The *Walmart* case has been decided, holding that Kentucky shall not expand the duty of reasonable care in premises liability cases to impose liability on the part of business owners for third parties' criminal acts that were not reasonably

foreseeable. After our review of the *Walmart* case, we have taken our case out of abeyance and revisited our opinion. We are satisfied that our holding comports with the precedent just enunciated by our Supreme Court.

The case currently before us involves a claim of negligent security resulting in an injury to a patron of a business. Alan Elstun (Appellant) appeals the partial summary judgment of the Kenton Circuit Court entered in favor of Saddle Club, LLC (Appellee). He argues that the circuit court erred by concluding that Saddle Club had no duty to protect him from an assault perpetrated by a fellow patron. Because Elstun failed to present evidence to indicate that Saddle Club breached a duty to protect him from the criminal acts of another, we affirm.

Late in the evening of July 13, 2019, Elstun entered Saddle Club, a small bar in Ft. Mitchell. He was accompanied by two friends, Michael Gregory and Scott Lewin. Kenneth Hollenkamp arrived minutes later to join his girlfriend who was seated near Elstun and his friends. Gregory testified in his deposition that Hollenkamp seemed agitated when he arrived. Elstun testified that Hollenkamp began what looked like a "heated discussion" with Lewin as soon as he saw Lewin at the bar; however, Elstun did not overhear their conversation.

In his deposition, Hollenkamp explained that Lewin was very intoxicated. After listening to Lewin call him names for several minutes, Hollenkamp stood up and asked him, "What is your f-in problem?" He stated that

the scene "took everybody's attention." According to Elstun, when Hollenkamp stepped away from the bar to talk with his girlfriend, Lewin exited Saddle Club.

Elstun testified that Hollenkamp and his girlfriend then returned to the bar, and she took a seat. Elstun indicated that Hollenkamp expressed his intention to assault Lewin, asking where Lewin had gone. Elstun told Hollenkamp that he thought Lewin was outside. He stated that Hollenkamp began a conversation with a female patron standing nearby. Then Hollenkamp suddenly approached Elstun and immediately struck him: "I just saw him start to come at me. . . ." Hollenkamp punched Elstun twice. Gregory confirmed that "it was all pretty quick right after that . . . all of a sudden, I could feel them scuffling behind me." Gregory explained that the bar was not loud and that the men had not shouted at each other. He could not tell whether anyone else -- including the bartender who was standing behind the bar -- overheard any interaction between them before the assault. Gregory reiterated, "[i]t happened really fast." He remembered that there were at least two bartenders on duty.

Danielle Sheehan, a Saddle Club bartender working that evening, testified in her deposition that she was trained to handle unruly and belligerent patrons and that she was aware of Saddle Club's "de-escalation processes," including ejection of any patron at her discretion. She indicated that the bar did not hire bouncers on a regular basis given "the general nature of the clientele" and

because "we don't have the crowd capacity" to warrant that kind of assistance. She felt comfortable calling the police if patrons become aggressive. Sheehan testified that there was only a "small crowd" at the bar on this evening and that the patrons "seemed like a happy-go-lucky group of people that were coming from a party." She did not hear any conversation between Elstun and Hollenkamp. She indicated that by the time she realized that anyone had been assaulted, "they were in the back parking lot." She did not call police.

Allison Halpin was also working as a bartender at Saddle Club on that evening. Halpin testified that she, too, was familiar with the bar's policies and procedures concerning unruly patrons. She indicated that although the bar was typically staffed with just two female bartenders, she never felt unsafe there. Halpin explained that she became aware of a commotion that night only when she saw a group of people "pulling each other off of other people." She explained that "it kind of dispersed very quickly." She indicated that no interaction among the patrons before that moment had given her any cause for concern. She explained that she had been "[r]ight across the bar" from "the commotion" and had not noticed any aggressive behavior before the assault.

On June 30, 2020, Elstun filed a complaint against Hollenkamp and Saddle Club. He alleged that Saddle Club failed to provide adequate security to protect his wellbeing. Following a period of discovery, Saddle Club filed a motion

for partial summary judgment. It argued that Elstun could not establish a *prima facie* case of negligence against Saddle Club because Hollenkamp's conduct was not reasonably foreseeable. In response, Elstun argued that genuine issues of material fact existed regarding the foreseeability of the assault. He contended that Saddle Club's breach of its duty to protect him caused him to suffer serious and lasting physical injury.

In an order entered October 29, 2021, the circuit court granted Saddle Club's motion for partial summary judgment. It concluded that Hollenkamp's assault of Elstun "was not foreseeable, and thus the Saddle Club had no duty to prevent that occurrence." Elstun's motion to alter, amend, or vacate was denied. This appeal followed.

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[1] 56.03. Because summary judgment involves only questions of law and not the resolution of disputed material facts, we do not defer to the trial court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky.

---

[1] Kentucky Rules of Civil Procedure.

1992). Instead, we review the decision *de novo. Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644 (Ky. 2007).

On appeal, Elstun contends that the trial court erred by concluding as a matter of law that Saddle Club owed no duty of care to Elstun because the assault perpetrated against him was not foreseeable. He argues that genuine issues of material fact exist regarding the foreseeability of his injuries sufficient to preclude summary judgment. Saddle Club argues that it was entitled to summary judgment because Elstun presented **no evidence** to indicate that Hollenkamp's criminal assault was foreseeable.

To recover under a claim of negligence, a plaintiff must establish that the defendant owed a duty of care to him; that the defendant breached that duty of care; and that the breach proximately caused the plaintiff's damages. *Lee v. Farmer's Rural Elec. Coop. Corp.*, 245 S.W.3d 209 (Ky. App. 2007) (citations omitted). A business owner has a duty to its patrons to exercise reasonable care to protect them; it breaches that duty where it fails to protect them from the reasonably foreseeable criminal acts of fellow patrons. *Napper v. Kenwood Drive-In Theatre Co.*, 310 S.W.2d 270 (Ky. 1958); *Murphy v. Second Street Corp.*, 48 S.W.3d 571 (Ky. App. 2001). Whether the defendant breached its duty of reasonable care is generally a question of fact for a jury. *See Sidebottom v. Aubrey*, 267 Ky. 45, 101 S.W.2d 212 (1937). However, where the risk of danger is

clearly unforeseeable and reasonable people could not differ as to the extent of the foreseeable risk at the time of the alleged negligence, the court is authorized to grant summary judgment. *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901 (Ky. 2013).

Because he was a patron of the bar, Saddle Club had a duty to protect Elstun from foreseeable criminal activity. And, although foreseeability is ordinarily a fact-intensive issue, there is no question in this case that the criminal assault perpetrated by Hollenkamp was not foreseeable.

The undisputed evidence of record presented to the trial court indicated that Saddle Club was neither loud nor over-crowded. No evidence indicated that Hollenkamp had been overserved by Saddle Club's bartenders, nor was he known to them to be violent. Furthermore, no evidence indicated that any employee was aware -- or should have been aware -- of an aggressive interaction between Hollenkamp and Elstun before Elstun was struck. In summary, nothing about Hollenkamp's conduct during the few minutes that he was in the bar would have led a reasonably prudent person to believe that he might injure another patron. Instead, the evidence indicated that no one had reason to believe that Hollenkamp would or was about to assault Elstun.

The court correctly found that there was no evidence to indicate that Saddle Club breached its duty of care by failing to protect Elstun from the

reasonably foreseeable criminal acts of a fellow patron.  In the absence of any genuine issue of material fact, the trial court did not err by concluding that Saddle Club was entitled to a judgment as a matter of law.

Therefore, we affirm.

ALL CONCUR.

BRIEF FOR APPELLANT:

W. Kash Stilz, Jr.
Covington, Kentucky

BRIEF FOR APPELLEE:

Gerald R. Toner
Louisville, Kentucky

Caroline K. Bruenderman
Louisville, Kentucky